## [200] MERLE v. ANDREWS.

Where the plaintiff sued the representatives of the defendant, who had been his agent, for a settlement of accounts, and prayed that they might be " ordered to deliver over all of said claims and convey said lands, and to make such further account of the said business as justice may require," &c., there was a decree establishing the right of the plaintiff to the lands, debts, claims, &c., embraced in the report, (of auditors,) and decreeing " that the defendants should convey the lands and hand over the evidences of debt, &c., (mentioning them specifically.) but reserving for the further consideration of the court, at its next term, so much of said report as finds $1,151.43 due to plaintiff;" the decree then ordered that the costs be paid equally by both parties: *Held,* That the decree was a final one, and could not, at a subsequent term, be reached by motion to set aside and vacate it. (Note 43.)

Where the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the plaintiff, or directs it to be sold, or directs the defendant to pay a certain sum of money to the plaintiff, and the plaintiff is entitled to have such decree immediately carried into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal, although so much of the bill is retained as is necessary, for the purpose of adjusting by further decree the accounts between the parties pursuant to the decree passed.

A final judgment or decree after the adjournment of the court cannot be reached except by appeal, writ of error, bill of review or some proceeding of the like character having that object directly in view. (Note 44.)

Where the deceased had been the agent of the plaintiff, and the accounts between the estate of the deceased and the plaintiff involved lands, claims upon third persons, and a claim of indebtedness from the deceased directly to the plaintiff, the plaintiff having no way of knowing how much money, if any, had been collected by the deceased, and depending mainly on evidence to be furnished by the books and papers of the deceased in the hands of his administrator: *Held,* That it was not necessary to present the direct claim for money to the administrator for allowance before bringing suit, and that it was properly joined with the other matters of account. (Note 45.)

Where an agent collects the money of his principal, the statute of limitations does not commence running until a demand has been made of the agent by the principal.

An alien cannot hold land in this State except in particular cases, and it would therefore be error to decree a conveyance to an alien; but if the lands be taken in payment of debts due him, the court will order the lands to be sold and the proceeds to be paid over to him.

## Merle v. Andrews.

Error from Galveston. This suit was brought by the plaintiff [201] in error against Jonas Butler, administrator of Edmund Andrews, deceased, and John S. Sydnor, guardian of H. B. Andrews, heir-at-law of said Edmund Andrews, at the Spring Term, 1845, of the District Court of Galveston county. It does not appear by the transcript on what day the petition was filed; but the first entry made in the case was made at that term, and the petition on its face purports to be to that term. Service was acknowledged by defendants. The petition charges, in substance, that Edmund Andrews, in his life-time, was the agent of plaintiff for the collection and settlement of certain claims in favor of plaintiff against persons resident in Texas, for which he gave his receipt, a copy of which is exhibited; that Andrews, in the course of said agency, made various settlements with persons against whom he held such claims, and took and received in settlement thereof claims on third persons and lands; that petitioner has not been able to obtain a statement of these, but that the same will appear by the books, letters, &c., of the said Andrews. The petition further avers that one Theoslon Grabbau, who was acting for petitioner, conveyed to said Andrews a large quantity of land; and that thereupon Andrews executed his bond, by which he bound himself to execute to plaintiff such titles to said land as were vested in him by said Grabbau. Petition further avers that Andrews has disposed of some of these lands, and has taken the securities in his own name; all of which will appear by the books, documents, and papers of said Andrews in the possession of his administrator. Petition prays that defendant may be ordered to deliver over all of said claims and to convey said lands, and to make such further account of the said business as justice may require, &c.

To this petition the defendant pleaded, denying all and singular the allegations in plaintiff's petition.

At the Spring Term, 1845, the following entry was made, to wit: "In this case, by consent, it is ordered that the matters in the petition set forth be referred to James P. McKinney and Elisha A. Rhodes to inquire into the facts alleged in the [202] petition and to report to the court, at the next term thereof, the facts aforesaid, and the state of the accounts between the said John A. Merle and Edmund Andrews, deceased." At the Fall Term, 1845, the referees made their report, accompanied by schedules, in which are set forth the various settlements made by Andrews of the claims of plaintiff in his hands, together with the claims, debts, lands, &c., received by him in such settlements; what claims, debts. &c., still remained in his hands belonging to plaintiff; and that the land specified in the bond referred to belonged to plaintiff, and that the bond was unsatisfied. The report finds a balance of $1,151.43 due on the 1st of September, 1845, from the estate of Andrews to plaintiff. This report seems to have been made from the books and papers of Andrews. At the Fall Term, 1845, the cause was heard, the parties appearing by their counsel, when a decree was rendered establishing the right of plaintiff to the lands, debts, claims, &c., embraced in the report, and decreeing that the defendants should convey the lands and hand over the evidences of debt, &c., all of which are specifically mentioned in the decree, reserving for the further consideration of the court, at its next term, so much of said report as finds $1,151.43 due on the 1st of September, 1845, to plaintiff. The decree then orders that the costs of reference, $50, as well as the costs of suits, be paid equally by the parties. At the Fall Term, 1846, a suggestion was made that Jonas Butler was no longer the administrator of Edmund Andrews, and a *scire facias* ordered to Henry B. Andrews, administrator, by whom service was acknowledged. At the Spring Term, 1847, the cause was continued by defendant. At Fall Term, 1847, it was continued generally. At Spring Term, 1848, it was continued by defendant, with leave to defendant to amend. At the Fall Term, 1848, defendant filed his exceptions to the report of the referees, which were overruled by the court. Defendant also filed his motion to set aside and vacate the decree of 15th, November, 1845, which was overruled. At the same term of the court, (Fall Term, 1848,) the [203] cause came on to be

Merle v. Andrews.

heard upon the equity reserved, when the matter was submitted to the court, and a decree rendered in favor of plaintiff for $998.43. After the rendition of this decree at the same term of the court, a motion was made by defendant for a new trial, which was granted. At the Spring Term, 1849, when the cause was called for trial, the court required the parties to proceed to the trial anew of all the matters that had been embraced in the suit as well as the matters settled by the decree of November, 1845, as the matter therein reserved for further consideration; to which the plaintiff objected, which objections were overruled by the court; whereupon the plaintiff embraced in a bill of exceptions this ruling of the court and the objections thereto, which was made a part of the record. The plaintiff then filed an amended petition, reciting the agency of Andrews, referring to all the previous proceedings in the cause, the reference, report, decree, &c., claiming that the decree of November, 1845, was final; averring that it had been executed by a conveyance of the lands, and by transferring over to him the evidences of debt specified therein, on the 24th day of April, 1846; and averring that there was due to said plaintiff, in addition to the amount of $1,151.43, specified in the report, the sum of $1,000, of which $500 had been received by said Andrews from Petty and $500 from Johnson. The amended petition alleged that the lands had been taken in payment of debts, and prayed that they might be sold and the proceeds be paid over to him in case the lands could not be decreed to him by reason of his being an alien. The defendant again filed exceptions to the report, upon which no action seems to have been had. Defendant also filed a demurrer to the petition, and answered, 1st. Denying all and singular, &c., and especially that the claim had ever been presented. 2d. The statute of limitations.

At the same term of the court, to wit, Spring Term, 1849, the cause coming on to be heard, the demurrer of the defendant to the plaintiff's petition was by the judgment of the [204] court sustained and the suit dismissed; to reverse which the plaintiff now presents this writ of error, and makes the following assignment of errors:

1st. The ruling of the court below at the Fall Term, 1848, setting aside the several decrees rendered in the case, and granting a new trial.

2d. The ruling of the court below at the Spring Term, 1849, requiring the parties to proceed to the trial anew of all the matters decided by the decree of the Fall Term, 1845, which decree had been carried into execution by the parties.

3d. The ruling of the court below at the Spring Term, 1849, overruling the motion of the plaintiff for judgement upon the report of the referees.

4th. The ruling of the court below sustaining the demurrer of the defendant to the petition of the plaintiff.

*J. B. Jones*, for plaintiff in error.

I. The decree of 1845 was a final decree, and after the adjourment of the court was beyond the control of the court, except upon bill of review. (2 Danl. Ch. Pr., 642; Story, Eq. Pl., 403, 404, 789; Luke Eq. Pl., 124, 125, notes and cases cited; Coop. Eq. Pl., 89; 2 Smith Ch. Pr., tit. ENROLLMENT, BILL OF REVIEW; Forgay *v.* Conrad, 6 How. U. S. R., 201; 2 Ala. R., 170; 12 Johns. R., 500; 1 Mon. R., 137; 13 Pet. R., 6; 3 Cr. R., 179; 11 Paige R., 189; 1 H. & M. R., 25; 2 Id., 477; 2 Wash. C. C. R., 433; 6 Ala. R., 361.)

II. The court erred in granting a new trial at the Fall Term, 1848. Appelate courts will revise the judgments of inferior courts granting new trials. (Kelton *v.* Bevens, Cooke R., 90; Boswell *v.* Jones, 1 Mash. R., 322; Ewing *v.* Price, 3 J. J. Marsh. R., 520; Voss *v.* Magee, 1 H. & M. R., 2.)

III. The court below sustained the demurrer, on the ground that it appeared from the petition that the plaintiff was an alien, and could therefore not recover lands. The object of taking the lands was to secure the payment of debts due the [205] plaintiff by the citizens of Texas; and for this purpose it was

Merle v. Andrews.

competent for the plaintiff to be the beneficiary in a mortgage or deed of trust, or even to receive the deed directly to himself. (Hepburn v. Dunlop & Co., 1 Wheat. R., 179; Hughes v. Edwards, 9 Id., 489; 2 Sug. Vend., 145, and notes; 6 Paige R., 448; 13 Wend. R., 546; 15 Pick. R.; 523; 1 Hay. R. 485.)

*Merriman* and *M. M. Potter*, for defendant in error. The defendant's demurrer was properly sustained. An alien cannot recover real estate. (Coke Inst., vol. 1, p. 129, C; 1 Bac. Ab., tit. ALIEN, (D,) p. 83; Com'n Dig., tit. ALIEN, (C. 5,) vol. 1, p. 560; Calvin's Case, 11 State Trials, 75 to 106, reported also in 7 Coke's Reports; Story Eq. Pl., sec. 54, 724; Coop. Eq., 25; Bayers v. Hogg, 1 Hayw. R., 485; Fairfax's Devisee v. Hunter's Lessee, 7 Cr. R., 603; Orr v. Hodgson, 4 Wheat. R., 453; Hughes v. Edwards, 9 Id., 489; Heirs of Holliman v. Peebles, 1 Tex. R., 673; Openheimer v. Levy, 2 Strange R., 1082.) The object of the whole transaction was for Andrews to hold the land in trust, in fraud of the law, for the benefit of Merle, an alien resident in the United States, a country foreign at that time to the Republic of Texas; and the plaintiff stands in the same light before the court as though he held the legal title, and was trying by action of ejectment to oust the defendant from the possession of the land. (Hubbard v. Goodwin, and Kenedy *et al.* v. Goodwin, 3 Leigh. R., 498, and the authorities there cited.)

This case cannot be brought within the scope of the decision of the Supreme Court of the United States in Hepburn & Dundas v. Dunlop & Co. and Dunlop & Co. v. Hepburn & Dundas. (1 Wheat. R., 179.) There the transaction amounted to a mortgage only. Where the debt by all courts is considered "the principal, and the land but an incident, the demand is a mere personal one." Here the object was to hold the land in fraud of the law.

The annexation of Texas to the United States does not affect [**206**] the question. (Story Conf. L., 205; Havana v. Eve, 3 Cr. R., 242.)

II. The title bond sued on is void; its object being to hold lands in trust for an alien. (Vattell, B. 2, ch. 8, sec. 114; Heirs of Hunt v. Heirs of Robinson, 1 Tex. R., 748.) In addition to the authorities cited by the court in Hunt's Heirs v. Heirs of Robinson, refer to Hall v. Mullin, 5 Har. & J. R., 193; Wheeler v. Russell, 17 Mass. R., 258; Farrar v. Barton, 5 Id., 395; Loomis v. Newhall, 15 Pick. R., 159; Mabin v. Coullon, 4 Dall. R., 298; Mitchell v. Smith, 4 Id., 269; Biddis v. James, C. Binn R., 321; Mitchell v. Smith, 1 Id. 110; Seidenbender v. Charles, 4 S. & R. R., 159; Brien v. Williamson, 7 How. Miss. R., 14; U. S. Bank v. Owen, 2 Pet. R., 538; Shivers v. Lynn, 2 How. U. S. R., 43; Hunt v. Knickerbacker, 5 Johns. R., 327; Steers v. Lashley, 6 Tenn. R., 61.)

In the case of Craig v. The State of Missouri (4 Pet. R., 410) the court say: "It has been long settled that a promise made in consideration of an act which is forbidden by law is void. It will not be questioned that an act forbidden by the Constitution of the United States, which is the supreme law, is against law." The case of Brien v. Williamson was a decision upon the Constitution of the State of Mississippi, The clause of the Constitution of the Republic which provided that "no alien shall hold land except, &c.," was as operative as the clause of the Constitution which provides "that no State shall emit bills of credit." (Edgar v. Fowler, 3 East. R., 222; Holman v. Newland, Cowp. R., 343.)

In the case of Hunt v. Knickerbacker (before cited) the court say: "It is a general rule of law that all contracts or agreements which have for their object anything which is repugnant to the general policy of the common law or contrary to the provisions of any statute are void and not to be enforced."

III. That part of plaintiff's demand which was for money was introduced by amendment in the spring of 1849. It was therefore barred by the statute of limitations. Besides, the [**207**] same, being an open account, is not properly

103

## Merle v. Andrews.

set forth so that the court can see what items are barred and what not, so as to discharge its duty under the seventh section of the act of limitations.

IV. There is a misjoinder of causes of action. Plaintiff sues to enforce the conveyance of real estate and to recover money.

V. The decree made in 1845 was not a final one. (Acts of 1836, p. 79, sec. 3.) A decree purporting to dispose of the merits of a cause, but leaving something still to be done, is not a final decree, and an appeal will not lie from it. (Brown v. Swan, 9 Pet. R., 1.) Certainly there must have been some time during the cause when a motion for a new trial would lie, and that motion would not lie until the final judgment was rendered in the cause. The first final judgment was rendered at the Fall Term, 1848. The defendant immediately filed a motion for a new trial of the whole cause. This motion was granted by the court, and the whole case stood open for another trial. (Whiting et al. v. U. S. Bank, 13 Pet. R., 6 ; Young et al. v. Smith et al., 15 Id., 287 ; Goode v. Cheshire, Dallam, 362 ; Jay v. McMullen, Id., 363 ; Andrews v. Andrews, Id., 375–427 ; Nash & Mabit.v. The Republic, Id., 631 ; The Palmyra, 10 Wheat. R., 502 ; Life and Fire Insurance Co. of N. Y. v. Wilson, 8 Pet. R., 291.)

A party on appeal may examine the whole case and open for consideration all prior or interlocutory orders or decrees any way connected with the merits of the decree from which he has appealed, where there has been no final judgment. (Pierce v. Nesbit, 1 Hill Ch. R., 453.)

LIPSCOMB. J. The second and fourth errors may be considered together. We will inquire what was the character of the decree entered up by the court in this case at the Fall Term, 1845. Was it such an adjudication of the matters embraced in it as to settle the rights of the parties as to [208] those matters? If it was, it could only be set aside by a bill of review or be reversed on appeal. The principal object of the suit was to compel the administrator of Andrews to transfer all the lands that the estate had received as agent for the plaintiff, and to turn over to the plaintiff titles to such as stood in the plaintiff's name, and such evidences of debts due the plaintiff from various individuals, and to account for any balance of money in the hands of the agent, was called for at the same time ; but it is very evident that from the very large amount of the debts due from individuals and the quantity of land shown by the proceedings that the two first were the principal objects sought by the petition, and the account for any balances in money due him from Andrews was but of secondary or minor consideration. And whatever might or should be the judgment of the court on this last matter could have no influence on the matters embraced and adjudicated in the decree of 1845. As to such matters, then, it seems the decree was final. To test this decree, whether it was final or only interlocutory, we will inquire if it was in a condition, as it stood, to sustain the jurisdiction of an appellate court by an appeal or writ of error. The case of Forgay et al. v. Conrad, in the Supreme Court of the United States, is in principle believed to be very much like the one under consideration. In that case the object of the bill was to set aside sundry deeds made by Banks for lands and slaves which the complainant charged to be fraudulent, and for an account of the rents and profits of the property so conveyed, and also for an account of sundry sums of money which he alleged had been received by one or more of the defendants, as specifically charged in the bill, which belonged to the bankrupt's estate at the time of his bankruptcy. The case was proceeded in until it came on for hearing, when the court passed a decree declaring certain deeds therein mentioned to be fraudulent and void, and directing the lands and slaves therein mentioned, to be delivered up to the complainant; and also directing one of the defendants named in [209] the decree to pay him $11,000 recovered from

Merle v. Andrews.

the bankrupt in fraud of his creditors, and that the complainant do have execution for the several matters as aforesaid, in conformity with law and the practice prescribed by the rules of the Supreme Court of the United States. The decree then directs that the master take account of the profits of the land and slaves, and an account of certain money not accounted for by one of the defendants, and concludes: "And so much of the said bill as relates to matters hereby referred to the master for a report is hereby retained for further decree in the premises." On an appeal from this decree a motion was made to dismiss it for want of jurisdiction. Chief Justice Taney, who delivered the opinion of the court overruling the motion, in discussing the character of the decree, says: "In the case of Whiting v. The Bank of the United States (13 Pet. R., 523) it was held that a decree of a foreclosure and sale of mortgaged premises was a final decree, and the defendant entitled to his appeal, without waiting for the return and confirmation of the sales by a decretal order. And this decision is placed by the court upon the ground that the decree of foreclosure and sale was final upon the merits, and the ulterior proceedings but a mode of executing the original decree. The same rule of construction was acted on in the case of Marchand et al. v. Girod (4 How. R., 503.") The Chief Justice proceeds: "The case before us is a stronger case for an appeal than the case before mentioned. For here the decree not only decides the title to the property in dispute, and annuls the deeds under which the defendants claim, but also directs the property in dispute to be delivered up to the complainant, and awards execution. And according to the last paragraph in the decree, the bill is retained merely for the purpose of adjusting the accounts referred to the master. In all other respects the whole of the matters brought into controversy by the bill are finally disposed of as to all of the defendants, and the bill, as to them, is no longer pending before the court. And the decree which it passed [210] could not have been afterwards reconsidered or modified in relation to the matters decided, except upon a petition for a rehearing within the time prescribed by the rules of this court regulating proceeding in the Circuit Court. If these appellants, therefore, must wait until the accounts are reported by the master and confirmed by the court, they will be subjected to irreparable injury; for the lands and slaves which they claim will be taken out of their possession and sold, and the proceeds distributed among the creditors of the bankrupt, before they can have an opportunity to be heard in this court in defense of their rights. We think, upon sound principles of construction as well as upon the authority of the cases referred to, that such is not the meaning of the acts of Congress; and when the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree immediately carried into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this court, although so much of the bill is retained in the Circuit Court as is necessary for the purpose of adjusting, by a further decree, the accounts between the parties, pursuant to the decree passed." (Forgay et al. v. Conrad, 6 How. R., 202.)

The Supreme Court of Alabama has appellate jurisdiction only. In the case of Weathered et al. v. James, in that court, on the question whether the appeal ought not to be dismissed for want of jurisdiction, on account of the decree not being final, Mr. Justice Ormond, who delivered the opinion of the court, says: "If a decree is final when it ascertains all the rights of the parties in litigation, then this is a final decree. The acts which are to be done, as the decree points out the mode and settles the principles by which these are to be regulated, are in their character ministerial, subject, to be sure, to the control and supervision of the [211] chancellor. The decree in this case even settles the question of costs, and leaves nothing to be done in future but to carry into effect the principles settled by the decree. If the reference had been to the master, for the purpose of ascertaining some fact on which to base a decree affecting the rights

Merle v. Andrews.

of the parties, it would be interlocutory in its character. No conceivable object could be attained by a contrary decision, which would only promote litigation and expense. In the case of Travis and Others *v.* Waters and Others, (12 Johns R., 500,) a decree almost precisely similar to this was held a final decree." (2 Ala. R., 175; Harrison's Practice, 622; 1 Mon. R., 137; 13 Pet. R., 6; 3 Cr. R., 179.)

In comparing the two cases just cited with the one before us, and the principles discussed and rules laid down by Chief Justice Taney in the case in 6 Howard, and by Justice Ormond in Weatherford *et al.* *v.* James, there can be no doubt that the decree rendered in November, 1845, was final, and such as would have allowed an appeal for revision in this court. In that decree lands were to be conveyed by Butler, the administrator of Andrews, and choses in action to be assigned; and in all probability this was executed long before the motion was made to set aside the decree, or the order of the court to go into a trial of these matters again. He was bound to perform the decree, and it was the same as if execution had been awarded in so many words; and in this case the decree even embraced the costs of the suit. Such being the character of the decree, we will next inquire if it was competent for the court below to set it aside on motion or of its own will.

The principle is believed to be applicable to courts of law and chancery that a judgment of the one and the final decree of the other, after the adjournment of the court, cannot be set aside without proceedings having that object directly in view. Under certain statutes in some of the States a mistake may be corrected; but it would have a bad tendency in protracting litigation and enhancing expense and costs of suits to allow the judgment of one term of the court to be [**212**] set aside at another. In the case of the Assigns of Medford *v.* Dorsey the award of arbitrators had been made the judgment of the court. The award was for a certain amount to be paid, and an indemnity was to be given by the plaintiff. By mistake, perhaps, the judgment was entered up for the money without the condition of indemnity. On a motion to show cause why the judgment should not be vacated, the judgment having been improvidently entered, until the indemnity was given, Judge Washington said: "This judgment, having been entered at a former court, though probably improvidently done, and might have been refused, had it been opposed, until the indemnity was given, cannot now be vacated. If there was an error in entering it, the court, at a subsequent term, cannot set it aside, unless it was entered by the *misprision* of the clerk, by fraud or the like." (2 Wash. C. C. R., 433.) In the case of Field *v.* Ross, Executor, a decree had been entered up in favor of a party seeking to enforce a lien on lands for the satisfaction of a debt. It ordered the sale of land and the appropriation of the proceeds to pay the debt. This decree was afterwards set aside and another entered, and the sale of the land under the first set aside merely by petition. Judge Mills, after referring to the fact that a final decree had, in point of practice, been treated as interlocutory, and that it had been noticed in the cases of Shelby and Roberts *v.* Smith's Heirs and Executor, (2 Marsh. R., 504,) Lane *v.* Lane, (2 Litt. R., 258,) and Watson *v.* Thomas, (Litt. S. C., 248,) he adds: "The two last cases we deem in point as to the principle which ought here to govern, and they settle the matter that this decree is final and could not be reached by petition and answer; and the decree of 1811 can only be deemed a decretal order to effectuate what the court had determined." He adds: "It has been urged that the impropriety of the first decree is apparent on its face. If so, it must be left to revision by writ of error or bill of review, and not in the present form." (1 Mon. R., 137.) In the case last cited it was further urged that the parties who had come in subsequent to the first decree, and had procured it to be set [**213**] aside, were not legally served with the process by publication, as it had not been published the time required by law, and that therefore the decree so first made was void. The judge says, "*Whether it be void or voidable, it cannot be*

Merle v. Andrews.

*contested in this way.*" Such is the reputation of this eminent jurist, that this question might with entire safety rest on his opinion. It will, however, be found on an examination of the authorities that he is fully sustained by Judge Story, Smith's Chancery Practice, and every other writer on equity jurisprudence to which I have been able to have access; that after a final decree enrolled, such decree can only be reached by a writ of error or appeal or by a bill of review. Judge Story says: "A bill of review is in the nature of a writ of error, and its object is to procure an examination and alteration or reversal of a decree made upon a former bill, which decree has been signed and enrolled." He says further: "The enrollment of decrees in England is now little known in practice; therefore bills of review are rarely brought. But as the same principles are generally applicable to all the varieties of this species of bills, we shall state them under the leading head of bills of review. Indeed, there is more reason for so doing, because in most of the State courts of equity in America, and certainly in the courts of the United States, all decrees in equity as well as judgments at law are matters of record, and are deemed to be enrolled as of the term of the court at which they are passed, whether actually enrolled or not." Again he says, "A bill of review also lies *only after a final decree.*" (Story Eq., secs. 403, 412.)

There can be no question but that the decree of 1845, on the authorities cited, had passed beyond the control of the District Court, unless by a bill of review.

There is no pretense that there has been a bill of review on any proceeding of the like character in this case. The ruling of the court on which the decree was set aside by no liberality of construction shows the remotest analogy to a [214] bill of review, and cannot claim any of its attributes. But even if, instead of the order of the court of its own motion ruling a trial of the whole matter of the bill, a bill of review had been offered to the court, it should have been disallowed, because at that time it was barred by limitation. The 9th section of the act of limitation of 1841, enacts "that no writ of error or *supersedeas* shall be granted to any judgment at law, nor shall a bill of review be granted to any decree pronounced in equity, after two years from the time such judgment or decree shall have been made final." At the time, then, of the action of the District Court, it had not lost all control over the decree, and it was as much beyond its reach as if it had never been before it or if it had been affirmed by this court. It was a question; so far as that court was concerned, *res adjudicata,* and whether right or wrong, not to be inquired into. And the District Court had nothing before it on which to act between the parties but the reserved equity on the amount of money due from the agent at his death to his principal, the complainant.

It is said that, this being a moneyed demand, the petition should have averred that it had been presented to the administrator and rejected by him before suit could have been brought for it against the administrator, and that it was improperly joined in the bill with the other matters of complaint. The complainant being compelled to seek relief on the principles of equity against the administrator for the other matters, and as he had no way of knowing how much, if any, money had been collected by his agent, we can see no objection to this matter being embraced in the bill. And as from the nature of the demand it was not possible that he could present it to the administrator in a shape that it could have been allowed, there was no necessity for presenting it at all. It depended mainly on evidence to be furnished from the books and papers of the intestate in the hands of the administrator whether anything could be proved. Under such circumstances we believe that the statute of non-claim did not apply to it.

[215] At the time the decree of 1845 was passed this matter was reserved

Merle v. Andrews.

until the next term. It was continued from term, to term sometimes without showing by what party; whenever the record states by which party it was continued, it is shown to be by the defendant. And at the Spring Term of 1848 it was continued, with leave to amend. At the Fall Term, 1848, the defendant filed his exceptions, which were overruled by the court; and at the same time defendant filed his motion to set aside and vacate the decree of 15th of November, 1845, which was also overruled. The overruling the motion to vacate the decree of November, 1845, was correct, not only because it could not be opened on motion, if it could have been at all, but only by bill, and also because that more than two years had elapsed since that decree had passed. At the same term a decree was entered against the defendant for an amount something less than the amount reported by the referees, which was on motion of the defendant set aside. At the Spring Term, 1849, the court, although at a previous term it had refused to vacate and set aside the decree of 1845, seems of its own accord, *mero motu*, to have required the parties to go into a trial of the whole matters contained in the bill, regardless of the decree made in November, 1845; to which the plaintiff objected, and his objection was overruled. The whole of this proceeding was wrong and unauthorized by any principle or rule of practice known to this court. The court, as has before been observed, had nothing before it for trial but the balance of money reported to be due. If the exceptions presented any fact that should be tried by a jury to show that amount not to be due, it should have been tried by a jury if demanded by either party. If no such fact was shown, which seems to have been the case, as the court overruled the exception, there was no reason perceived why the court should have withheld its decree, or after making it, set it aside again, unless it can be supposed that the court believed that the debt or money demand was barred by not having been presented to the administrator within the time [**216**] prescribed by law. This, we have seen, is an objection that cannot be sustained. It was said, however, that this moneyed demand was barred by the general statute of limitations, because suit had not been brought within two years from the time the cause of action accrued. (Sec. 1, Law Lim., 1841.) We are not informed by the evidence at what time the money went into the hands of the agent, nor at what time the principal had notice of its being in his hands. The statute surely could not begin to run until *the principal had notice that it had been collected.* And a majority of the court believe that between an agent and his principal it does not commence running until a demand has been made of the agent. Until that demand has been made, it seems to me that the possession of the money by the agent would be the possession of his principal.

It will be seen that from the view we have taken of the character of the decree of November, 1845, neither the alienage of the complainant nor the maladministration of the first administrator can be looked into in this case. Exceptions of that character could only have been presented in the form and within the time prescribed by law. If, however, the question of alienage made by the defendant in argument had been fairly presented at the proper time and place, the only difference it could have made in the decree would have been to have ordered the sale of the land and the payment of the proceeds to the complainant; because if it is admitted that an alien could not hold land, and that it would therefore have been error to decree a conveyance to him, yet there can be no doubt, if those lands were taken in payment of debts due him, a court of equity would have held that he could not be deprived of the proceeds of such land on sale of them, and would have ordered them to be sold and the proceeds paid over to him. The court erred in ruling a trial of the matters that had been adjudicated by the decree passed in November, 1845, and in all the proceedings had subsequent to such ruling. And the judgment is reversed down to the overruling [**217**] the exception taken by the defendant to the report of referees on the moneyed demand, and the cause is remanded to the court below, with instructions to dispose of the equity reserved on the moneyed

demand, and to decide the same in accordance with and in conformity to this opinion.

NOTE 43.—The character of a judgment must be tested by its operation on the objects sought to be attained by the proceedings. If the cause be determined on its merits, if the rights controverted between the parties be settled, the judgment will be final, although ulterior proceedings to carry the judgment into effect may be required. (Cannon *v.* Hemphill, 7 T., 184; Patrick *v.* Gibbs, 17 T., 275; McFarland *v.* Hall, 17 T., 676; Martin *v.* Crow, 28 T., 613; Harmon *v.* Bynum, 40 T., 324.)

