JOHN D. FREEMAN v. J. F. McANINCH ET AL.

No. 276.

1. **Trespass to Try Title — Boundary.** — It is common practice in this State, in determining the question of boundary lines between adjoining surveys, to present the issue in a petition in the ordinary form of trespass to try title. Such petition practically presents both the question of title and of boundary. This practice is clearly permissible and can not be seriously questioned.

2. **Retraxit.**—Parties in open court may withdraw from a suit on trial matters which would otherwise be concluded by the judgment.

3. **Same—Fact Case.**—Action of trespass to try title against several defendants. The question involved the location of a boundary line. One of the defendants owned 134 acres of the tract sued for as described in the petition. On the trial it was made known to the court by both parties that the question of boundary alone was in issue. The defendant did not exhibit his title to that portion of the land sued for owned by him. The judgment was for the plaintiff, that he recover the land. *Held*, that parol testimony was competent to prove the retraxit; and upon it appearing that boundary alone was put in issue, the rights of the defendant to his land included in the plaintiff's petition was not concluded.

4. **Same—Res Adjudicata.**—When an issue is expressly withdrawn upon the trial the judgment does not affect it. Rushing v. Runnels, 71 Texas, 352, adhered to.

APPEAL from Bell. Tried below before Hon. W. A. BLACKBURN.

*Peeler & Peeler*, for plaintiff in error.

*W. S. Holman*, for defendants in error.

FISHER, CHIEF JUSTICE.—From the record we find the following facts:

1. That on the 2nd day of December, 1886, plaintiff in error, John D. Freeman, filed a suit in the District Court of Bell County, in the ordinary form of trespass to try title, against J. F. McAninch and Daniel McCray, for the recovery of 622½ acres of land, a part of the Joseph Washington one-third league, situated in Bell County, and also for damages for the alleged trespass, and that that suit was numbered on the docket 1311.

2. That in answer to the action of Freeman, as set out in the first finding of fact, the defendants in that suit pleaded a general demurrer, a general denial, and a plea of not guilty.

3. That in the trial of the above suit, number 1311, in the District Court of Bell County, the parties to the suit, plaintiff and the defendants, by and through their attorneys, in open court and in the presence of the court, mutually agreed that the only question involved in the cause then before the court (number 1311) was one of boundary between the Washington and the Allen surveys.

4. The charge of the court in cause number 1311, in submitting the case to the jury, did only submit the issue and question of boundary between the Washington and Allen surveys.

5. In cause number 1311 the plaintiff claimed to own the Washington survey and the defendants claimed to own the Allen survey, and we find as a fact that the question really in controversy in that cause, and the one adjudicated, was only the issue of boundary between the two surveys, and that the title to the land now in controversy in this suit before us was not in fact adjudicated and litigated in cause number 1311.

6. That on the 5th day of October, 1883, the jury in cause number 1311 returned a verdict in favor of the plaintiff in that cause, John D. Freeman, and thereupon the court entered a judgment in favor of the plaintiff for the 622½ acres of land, a part of the Joseph Washington one-third of a league in Bell County, and for a writ of possession in plaintiff's favor, and for his costs and a writ of execution.

7. The land described in the petition filed in cause number 1311, and in the judgment in that cause rendered, embraces and includes the land in controversy in the suit before us, and the land so in controversy in this cause is 134⅓ acres.

*Opinion.*—We have not attempted to find all the facts that are shown by the record, but have only found on such issues that are important to be considered, and that are raised by the assignments of error. We make a brief statement of the controversy as we understand it, in order to aid the mind of the reader in more fully understanding the questions passed upon in this opinion.

While the petition in cause number 1311, by Freeman against McCrary and McAninch, was in the usual form of trespass to try title for the recovery of the 622 acres of the Washington survey, the real purpose of the action was to settle the boundary between the Washington survey, which was claimed by Freeman, and the Allen survey, which was claimed by the defendants, McCray and McAninch. At the time of the trial of the cause, McCray owned a part of the Washington survey, the 134⅓ acres in controversy, and this 134⅓ acres was embraced within the lands described as owned by the plaintiff, Freeman, in his petition.

Upon the trial of the cause the parties to the suit, by their attorneys, agreed before the court that the only issue between them was the one of boundary between the Washington and the Allen surveys, and the facts show that in pursuance to that agreement the defendants in that suit did not offer or introduce in evidence the title that was then held by McCray to the land in controversy, a part of the Washington survey. The trial court in that cause, in presenting the case to the jury, only submitted the issue of boundary, in accord with the agreement of the parties. The judgment that was rendered by the court in favor of Freeman in that suit

included all of the land included in the Washington 622 acres survey and the land held by McCray under his title, which was not litigated or offered in evidence in that case.

The court below, upon the trial of this cause now before us, over the objections of the plaintiff in error, permitted witnesses Goodrich and Holman, who were the attorneys of the parties in cause number 1311, and witnesses McCray and McAninch, to testify to the effect that it was agreed by the parties to the cause number 1311, at the trial thereof, in open court, that the only issue and question in said cause was one of boundary between the Washington and Allen surveys, and that the respective titles of the parties to the surveys were not in issue.

The ruling of the court in admitting this evidence presents the principal question in the case.

The objections urged to the testimony by the plaintiff in error are as follows:

1. Because the record in this cause was the best evidence of what issues were involved.

2. Because such testimony tended to contradict the written record of said cause number 1311.

3. Because the pleadings of the parties and the judgment are the best evidence of the issues involved in said cause.

4. Because it affirmatively appeared that such agreement tended to impeach the judgment and contradict the written pleadings of the parties in said cause, and that if the same was made at all, it was after the issues were joined and the commencement of the trial of said cause, and was therefore inadmissible.

It is a common practice in this State, in determining the question of the boundary lines between adjoining surveys, to present the issue in a petition addressed to the court in the ordinary form of trespass to try title; and a petition so framed is as a pleading sufficient to put in issue the titles of the parties, although the issue of boundary may be the only question sought to be determined, and is in fact the only issue submitted and tried before the court. The petition so framed will embrace the issue of title, and may embrace the question of boundary, and either or both may be tried and adjudicated under such a petition. A petition so drafted in the ordinary form of trespass to try title practically presents two issues and distinct questions—that is, title and boundary—as much so as if the pleading had been so formed as to present these questions in separate counts.

We apprehend that the practice in this respect is clearly permissible, and that it can not be seriously questioned. And we can see no good reason why both of these issues or either may not be settled in one action when presented by a petition of trespass to try title. The right in this

.respect is often illustrated in actions of trespass to try title, when in the same controversy the damages and rents due the plaintiff are recovered.

The law in this State, except in the Justice Courts, requires that all issues sought to be adjudicated must be by pleadings in writing to that effect, and it is the policy of the law with us, that when there are several issues, to encourage their determination in the same controversy, when this can be done; but while this is true, we know of no rule of law or pleading that requires a retraxit or abandonment or withdrawal of an issue that is presented by the pleadings should be in writing in order to take that question or issue out of the case.

"As we understand the law, matters which would otherwise have been ·considered as concluded by the decision of the case may be withdrawn, so that they are in no way affected by the judgment." 21 Am. and Eng. Encycl. of Law, 185, 192, and note.

And the retraxit or abandonment in open court is effective for that purpose. Black's Law Dic., 1038, "Retraxit."

As resulting from the views here expressed, it is seen that the effect of the agreement made in open court by the parties in the trial of cause number 1311 was to eliminate the question of title as an issue in the case, and to confine the question for determination solely to that of boundary. The effect of this agreement was to accomplish this end as effectively as if the parties to the action had so framed their pleadings as to solely present the issue of boundary. If this be the effect of the agreement, the pleadings thus standing certainly did not present and include any issue ·as to the respective titles of the parties, and the question for adjudication was reduced to one of boundary.

This brings us to the question whether the judgment could be controlled ·or explained or modified by the evidence showing this agreement.

The principle of res adjudicata operates only as a bar to a second suit when the point in controversy is the same in both cases and when the decision was upon the merits. The points actually decided will determine if the estoppel exists, and the identity of the cause of the demand must be the same in both instances.

The judgment may be resorted to as showing what issues were determined, and for this purpose may prima facie establish the issue; but it by no means follows that the judgment, even between the same parties, is conclusive in this respect, and that other evidence may not be resorted to in order to establish what was the issue before the court and the point actually adjudicated. This principle has been recognized and applied in many cases. 21 Am. and Eng. Encycl. of Law, 191, 192, and notes.

In Hickerson v. Mexico, 58 Missouri, 61, the court said: "It is undoubtedly true that in some of the earlier cases it was decided that a judgment was conclusive as to all facts arising upon the record which were or might have been passed upon. But it is now generally, if not

universally, conceded, that parol evidence may be received for the purpose of showing whether a question was determined in a former suit. The record may first be put in evidence, and then it may be followed by such parol evidence as may be necessary to give it effect, or show on what issue it was granted. When a number of issues are presented, the finding in any one of which will warrant the verdict and judgment, it is competent to show that the finding was upon one rather than another of these different issues. In order to show by evidence aliunde that the matter is res adjudicata, it must appear not only that it was properly in issue in the former trial, but also that the verdict and judgment necessarily involved its determination. If it appears prima facie that a question has been adjudicated, it may be proved by parol testimony that such question was not in fact decided in the former suit. Where matters could have been proved in the former action, the presumption is that they were proved, but this presumption may be rebutted and overthrown."

In Russell v. Place, 94 United States, 606, the court uses this language: " It is undoubtedly settled law, that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to the question in another suit between the same parties. But to this operation of the judgment, it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject matter of the action will be at large and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible."

In Cunningham v. Foster, 49 Maine, 68, the rule is thus stated: " It is a well settled rule of law, that if a verdict, award, or judgment of a court of competent jurisdiction has apparently, but not necessarily, covered the very ground on which a second action is brought, though this would be perhaps prima facie evidence that the matter had passed in rem judicatam, yet it may still be averred, and proved by parol testimony, that the cause of the second action was not in issue, and the point to be established by it was not in fact decided in the former case."

. In support of these authorities, see Foster v. Wells, 4 Texas, 105; Horton v. Hamilton, 20 Texas, 611; Cook v. Burnley, 45 Texas, 115; Oldham v. McIver, 49 Texas, 571; Pishway v. Runnels, 71 Texas, 352.

An accurate writer, in treating of this subject in a late work, lays it down as a rule, that if it appear from the record that several distinct

matters may have been litigated, upon one or more of which judgment was rendered, and the verdict and judgment is general, the whole subject matter of the action will be at large and open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined. 2 Black on Judg., secs. 624, 626, 627, 628, 724. To the same effect, also, 1 Herman on Estoppel and Res Adjudicata, sections 111 and 227.

In an application of this principle last stated, we think it can be invoked in this case, for, as before shown, the petition in cause number 1311 involves not only the question of title, but also the issue of boundary; or, in other words, two issues under the state of the pleadings in that case may be determined, or the trial may only result in an adjudication of one. The verdict of the jury in that cause was general, and the judgment, in effect, follows the verdict, and does not show which of said issues was settled. It is a general judgment in favor of the plaintiff for the land. This result could have been reached under the issue of boundary or of title. · The judgment being silent upon which issue it is based, it is in this respect uncertain, and extrinsic evidence, under the authorities cited, we believe was admissible to explain it. The abandonment of the issue as to the title narrowed the question to one simply of boundary, and the judgment, thus explained, shows that the controversy that was actually tried on the merits was boundary pure and simple. And thus confined, the judgment, we think, was res adjudicata and estoppel to that extent and no more.

The plaintiff in error next contends, that the judgment in cause number 1311 should be held conclusive of the question of title, because as the defendants in error's title to the land now in controversy then existed, it could have been adjudicated, although in fact it was not.

The doctrine, that the adjudication is final, not only as to matters actually determined, but as to any matter which the parties might have litigated, may find application in those demands that are entire and indivisible, but we do not think it should be applied in a case like that before us, when the parties by agreement have consented to not litigate and determine an issue that might have been litigated, but to confine the controversy to another issue that is properly raised by the pleadings. Pishway v. Runnels, 71 Texas, 352.

Under the facts of the case, we do not think there was any error in the court to refuse the charge requested by the plaintiff in error, as shown in his tenth assignment of error.

The seventeenth assignment of error, that raises the question of limitation, we think, under the facts, is without merit.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered January 24, 1894.

KEY, Associate Justice.—As there is no inconsistency nor ambiguity in the record in cause number 1311, and as the judgment therein rendered, in plain and unmistakable terms, awards the land involved therein, which includes the land in controversy in this case, to plaintiff in error, I do not agree with the majority of the court, that parol evidence was admissible to show that the question of title was not in fact litigated.    Black on Judg., sec. 625.

In my opinion the judgment of the trial court ought to be reversed.

Delivered January 24, 1894.