| 45 | 97 |
|----|-----|
| 87 | 138 |
| 45 | 97 |
| 89 | 616 |

## WILLIAM M. COOK v. FRANCIS A. BURNLEY ET ALS.

1. JURISDICTION—ABATEMENT—RES JUDICATA.—A party against whom a judgment has been rendered in a court of the United States, in a suit instituted subsequent to the institution of another suit between the same parties, involving the same subject-matter in the courts of this State, cannot avoid the force of the Federal judgment by pleading that it was rendered in a proceeding begun after the State court had obtained jurisdiction of the matter in controversy, and that the Federal judgment was in fraud of the jurisdiction of the State court; though such defense might be good if properly pleaded and at the proper time in abatement of the second suit, it is no defense to a judgment recovered in a court of competent jurisdiction.

2. JUDGMENT—RES JUDICATA.—The affirmance of a judgment secures its validity as a final judgment, whatever may have been the errors committed by the court in rendering it; the same result is produced by the failure to take an appeal, or by the lapse of time for revising it by a writ of error. Whether a judgment actually rendered is made final and conclusive in one way or the other, the question would equally remain open as to what issue was decided, and what facts were involved in that issue, and conclusively determined in its adjudication when the judgment is pleaded in bar.

3. JUDGMENT—RES JUDICATA—ESTOPPEL.—In order that a former judgment should operate an estoppel on rights asserted in a second action, it is essential that the issue in the second action upon which the former judgment is brought to bear, was a material issue in the first action, necessarily determined by the judgment therein, and that the former judgment was upon the merits.

4. EVIDENCE—JUDGMENT.—It may always be shown by evidence *aliunde*, that any matter which the issue was broad enough to cover arose and was determined in a former suit. If it appears, *prima facie*, that a question has been adjudicated, it may be proved by parol testimony that such question was not in fact decided by the former suit.

5. PRACTICE—RES JUDICATA.—When in response to a plea of *res judicata* the fact is pleaded in avoidance of the judgment, that a compromise of the matters in controversy had been made between the parties pending the appeal on which the judgment was rendered, and there is no exception to the plea, but a denial thereof, a refusal to permit a jury to pass on the issues of fact thus presented is error.

6. INJUNCTION.—An injunction against a party, prohibiting him from

7

making any claim to land "by publication, writing, or spoken words," is the exercise of extraordinary power, which should be examined with close scrutiny before receiving judicial sanction in any case.

7. ESTOPPEL—EVIDENCE.—If, from the record alone, no intimation is given whether a particular matter has been determined or not in a former suit, it is incumbent on the party alleging that a question has been settled by a former judgment, to support his allegation by proof *aliunde.*

8. DISTINGUISHED from Durant *v.* Essex Company, 7 Wallace, 109.

9. ESTOPPEL.—To be a bar to future proceedings, it must appear that the former judgment necessarily involved the determination of the same fact to prove or disprove which it is offered in evidence. It is not enough that the question was in issue in the former suit. It must also appear to have been precisely determined. Where, in the answer, various matters of defense are set forth, some of which relate to the maintenance of the suit and others to the merits, and there is a general decree dismissing the bill, it cannot be regarded as a bar to future proceedings.

ERROR from Harris. Tried below before the Hon. James Masterson.

This suit was brought February 4, 1852, in the District Court of Calhoun county, by A. T. Burnley & Levi Jones, against William M. Cook, James H. and J. W. Baldridge, —— Sparks, —— Chipman and Soloman Cunningham. The petition alleged ownership of three quarters by Burnley, and a legal but contingent interest by Jones, of one quarter of the league of land granted to Juan Cano, as a colonist of De Leon's colony, the laying off a town site thereon more than four years previously, and various acts of ownership, in order to establish and build up the same. That in 1849, said Cook located a 320-acre certificate, and caused a survey of 179 acres to be made on said league, extending north of Powderhorn bayou. In April, 1850, a bill had been filed in the United States Court by Burnley, against John H. Brown, John F. Segiri, Charles Mason, D. H. McDonald, Chambers Etter, C. A. Ogsbury, J. D. Cochran, and W. Hawley, to prevent their laying off a rival town, building a wharf, etc., on this 179 acres, which they were proceeding to do, under claim of title

under S. A. White, and an injunction was made perpetual against the parties. After this injunction, supplemental proceedings, for a contempt in violating this injunction, and to make it perpetual as against Cook, took place in the United States Court; but on Cook's denial of all connection with Brown and others, the motion was refused. This suit was brought, alleging, subsequently, certain proceedings by Cook and the other defendants under him, to lay off and build up a rival town on said 179 acres, to build cattle pens, a wharf, etc., to ship cattle therefrom, and alleging trespasses on said land to be to the damage of plaintiffs $10,000. The prayer in the petition was as follows:

"The premises considered, your petitioners pray for a writ of injunction to restrain the said defendants, and each of them, their agents and hirelings, from entering upon the land immediately north of Powderhorn bayou, in said county of Calhoun, for the distance of 1,100 varas north of said bayou, and north of which the said Juan Cano grant extends; and from hauling, or placing any lumber, timber, or materials of any kind upon the said land, and from building any dwelling house, store, or warehouse, or building any other house or structure on said land, and from building any wharf or other structure, extending from any part of said land into Matagorda bay; said injunction to be of such a character and on such terms and conditions as to your honor may seem meet; and that on the final hearing, said injunction be made perpetual; for ten thousand dollars, which petitioners aver to be their damages; and for costs and for general relief, your petitioners pray for citations against said defendants," etc.

The case was moved by consent to Harris county, in which, after answer filed, on motion of defendants, the court dissolved the injunction which had been granted, and dismissed the petition. On appeal to this court the judgment was reversed. (Burnley v. Cook, 13 Tex., 586.)

The case thus sent back to the Harris District Court in 1855, remained on its docket without proceeding of any kind, or

order, except for continuance, until the May Term, 1867, when, on motion of Cook, it was dismissed.  On his motion also, at the May Term, 1868, it was reinstated on the docket, and continued, to make parties.  June 3, 1870, he filed a cross-suit, making the heirs of Burnley parties, alleging that, subsequent to the institution of this suit, a suit in ejectment against him by Burnley and Porter, the latter representing same interest as Jones, had been brought in the United States Court at Galveston for the same property and on same title, which suit in the United States Court he alleged to be a fraud on the jurisdiction and "a deliberate contempt" of the State Court, and, notwithstanding he had pleaded the pendency of this suit, judgment had been rendered against him in the United States Court for the recovery of said league of land; that he had sued out a writ of error to the Supreme Court of the United States, pending which he had made a compromise with George W. Carter, agent of Burnley's executors, copy of which he annexed.

The heirs of Burnley and Jones, August 1, 1871, amended their pleadings.  They set up the suit in the United States Court, and judgment therein, and affirmance by the Supreme Court of the United States, January 23, 1867, and a further writ of error to said Supreme Court against a proceeding on its own mandate, awarding writ of possession, dismissed by said Supreme Court, as an adjudication of said controversy of title to said league of land, and an estoppel to further claim thereof by said Cook.  As to the compromise, they alleged the same to be null and void on the face thereof; and, further, that the said Cook, after affirmance of said judgment in the Supreme Court of the United States, had filed his petition in the District Court of Calhoun county against the heirs of said Burnley for an injunction against said judgment, and the specific performance of said compromise, upon the same grounds set forth in this suit; that the cause was removed into the Circuit Court of the United States, answer filed thereto, and motion made to dissolve the injunction; whereupon said Cook

had dismissed the bill; that afterwards, on September 14, 1868, he filed in the District Court of Calhoun county another suit for injunction against said judgment, and specific performance of said compromise, to which answer was made, and the injunction dissolved, and suit dismissed for want of any cause of action therein; that Cook sued out a writ of error to this court, but this court affirmed the judgment of the court below on certificate; that said Cook had again filed a bill in the Circuit Court of the United States, asserting the same rights under said compromise, and praying injunction against enforcement of said judgment, but that his application had been heard before his Honor Judge Woods, the judge of said Circuit Court, at New Orleans, who refused the injunction and ordered the writ of possession to be proceeded with. Exhibits were filed of the records in all the judgments and proceedings, and they were alleged to have finally adjudicated the right and title to the league of land, and all right and claim set up by him in this suit, and they prayed that his continued prosecution, or assertion thereof, in defiance of said judgments, to their costs and harrassment, be perpetually enjoined. Cook demurred, and again pleaded his original title and the various statutes of limitation to support his claim to the land. The cause coming on for trial upon the pleadings and the said records and proceedings, the court overruled Cook's demurrer, sustained the allegations and proofs of *res adjudicata*, and decreed a perpetual injunction. That injunction was provided for in the judgment, as follows: "that the said William M. Cook be, and he is hereby, perpetually enjoined and restrained from hereafter asserting, or in any of the courts of this State, or in any writing, or by printed publication, or by spoken words, any right or title to any part of said Juan Cano headright league of land, by virtue of any claim to the same possessed by him on the 30th day of June, 1859, the date of the judgment of the United States District Court for the eastern district of Texas, or by virtue of the instrument signed by said defendant, William M. Cook, and

George W. Carter, dated 17th day of November, A. D. 1866, or by virtue of any other claim possessed by the said defendant, on or before the 5th day of August, 1869, the date of the judgment of the District Court of Calhoun county."

Cook filed a petition for rehearing, which was refused, and then prosecuted his writ of error.

*Crank & Wilson,* for plaintiff in error, filed an exhaustive brief as to the powers and duties of the court first having jurisdiction of a cause embracing the same parties and the same subject-matter. They referred to the following authorities: Rose *v.* Himely, 4 Cr., 241; Thompson *v.* Tolmie, 2 Pet., 157; Wilcox *v.* Jackson, 13 Pet., 498; Cocke *v.* Halsey, 16 Pet., 71; Hickey *v.* Stewart, 3 How., 759; United States *v.* Arredondo, 6 Pet., 720; United States *v.* Nourse, 6 Pet., 473; Philadelphia & Trenton R. R. Co. *v.* Stimpson, 14 Pet., 458. And specially in cases of *lis pendens:* Conklin's Treatise U. S. Court Practice; Taylor *v.* Carryl, 20 How., 583; Freeman *v.* Howe, 24 How., 450; Kingsland *v.* Spalding, 3 Barb. Ch., 341; Miller *v.* Hall, 1 Bish., 229; Debell *v.* Foxworthy, 9 B. Mon., 228; Clark *v.* Farrow, 10 B. Mon., 446; Hagan *v.* Lucas, 10 Pet., 400.

*Carleton & Robertson,* also for plaintiff in error.—Can Burnley *et al.,* while prosecuting this suit, as they have never ceased to do, plead the judgment in their subsequently-brought suit in the United States court as *res adjudicata* in this suit?

The State Court, in which they first sued, had jurisdiction, and the jurisdiction had attached by means of personal service; hence when a judgment final is obtained therein it will be conclusive not merely of all matters litigated, but of all that might have been brought in litigation between the parties and their privies. (Sutherland *v.* De Leon, 1 Tex., 250; Hatch *v.* Garza, 22 Tex., 176, and the cases there cited.)

By the United States statute in force when these suits were

brought, it provided that suits can be directly removed from State to United States courts by defendants. (Brightley's Dig., 128, sec. 19.) When that is done, the United States Court to which the removal is made does not have concurrent but has exclusive jurisdiction.

The United States statute cited, as it provides only for a removal by defendants, when construed in accordance with the rule *expressio unius est exclusio alterius*, excludes the conclusion that suits can be directly removed by plaintiffs, and *a fortiori* that they can indirectly be so removed, or can be in effect removed by a new suit. What the plaintiffs cannot do directly, they cannot do by indirection.

After bringing and while continuously prosecuting a suit in a State Court which has jurisdiction, they cannot oust that jurisdiction by a new suit which does not have concurrent jurisdiction, but which would have exclusive jurisdiction if such jurisdiction were invoked, as the statute provides, by the defendants.

Burnley *et al.* might, it is true, have sued in the United States Court if they had sued there first, but not otherwise. Cook *et al.* did not need to plead in abatement when the fact that suit was brought in the State Court made the jurisdiction of the court exclusive, unless a removal was obtained by the defendants, in which case the jurisdiction of the United States Court would be exclusive.

The decision of the United States Court as to its jurisdiction in a case not under the United States statute cited, would not be binding on the State Court, the jurisdiction of which had been first invoked and by the same party.

Again: Both suits are for the same land. Plaintiffs cannot bring a second suit in the same court, or indeed in any court, unless they as a condition precedent lose their first suit. They can only do so in case a verdict and judgment shall pass against them. (O. & W. Dig., 439 sec. 2043.)

*Ballinger & Jack* and *F. S. Stockdale,* for defendants in error.

I. Admitting the two suits to have been in all respects identical, it is very certain that the fact that suit in the State Court was first instituted, in no degree affects the conclusiveness of the judgment of the United States Court. The authorities cited for appellant are all cases in which it was held that property taken into actual custody by one court could not be taken from it by subsequent proceedings in another court of concurrent jurisdiction. (See the distinction plainly drawn in Loring v. Marsh, 2 Clifford, 311.)

There is another class of cases in which, in the same jurisdiction, upon timely and proper plea of the pendency of a prior suit, a second suit between same parties for same matter substantially will be abated.

And still another in which the same subject-matter coming before a second court of concurrent jurisdiction, the conclusiveness of decisions upon such subject-matter by the prior court is recognized. But none of these cases can be confused with this. The rule well established in the jurisprudence of both State and Federal jurisdiction is, that the pendency of a suit in one cannot affect the jurisdiction of the other.

As to the State Court, see Wodo v. Lake, 13 Wisconsin, 84; Wuntz v. Hart, 13 Iowa, 51; Bonner v. Ivy, 9 Johns., 221; Walsh v. Durkin, 12 Johns., 99; Chatzell v. Bolton, 3 McCord, 33.

For very similar reasons, suit in another State between the same parties for the same subject-matter cannot be so pleaded. (Drake v. Brander, 8 Tex., 357.)

As to the Federal Courts: In Wadleigh v. Veazie, 3 Sumner, 165, suit for land in the United States Court in Maine, defendant pleaded pendency of a prior suit by him against plaintiff, for same land in the State Court of Maine. Judge Story overruled the plea and proceeded with the suit.

In White v. Whitman, 1 Curtis, 496, it was held that a second suit can be brought in the Circuit Court of the United States while one is pending for same cause between same

parties in the State Court. The same rule is affirmed in Loring *v.* Marsh, 2 Clifford, 311.

But the whole subject was settled in all its bearings by the Supreme Court of the United States in the record pleaded and in proof in this cause. (Cook *v.* Burnley, 11 Wallace, 609.) The court there held Cook's plea in the United States Court, of the pendency of this suit, not a good plea in that court. Also, that it was filed too late, and the causes of action not the same. They cited and approved the cases in 3 Sumner, 165, and 1 Curtis, 496.

It is apparent from the record that Cook did not plead the pendency of this suit until after he had answered to the merits in the United States Court. Being a plea in abatement, it was therefore waived. This is the decision in all courts, and is elementary in pleading. (Drake *v.* Brander, 8 Tex., 357; Percival *v.* Hickey, 18 Johns., 257; Peak *v.* Bull, 8 B. Mon., 428; 7 Metcalf, 570; 16 Me., 140; 16 Vermont, 236; 3 Watts & Serg., 395.)

It is a dilatory plea, and not favored. (Thompson *v.* Lyon, 14 Cal., 39.)

The modern tendency is not to abate the second suit unless as a matter of fact and law it appears to be vexatious. (State *v.* Dougherty, 45 Mo., 294.)

In Texas, the only effect of a plea, in proper time, of a prior action pending in the same or other State Court, is to put the plaintiff to his election of the suit with which he will proceed to trial. (Castro *v.* Whitlock, 15 Tex., 437; Payne *v.* Benham, 16 Tex., 367; Chitty on Cont., 683, note 2; Bigelow on Est., 589, *et seq.;* Coles *v.* Carter, 6 Cowen, 692; 14 Mass., 243; 14 Pick., 167.)

II. The judgment of the United States court in ejectment is conclusive, and sustains the plea of *res adjudicata* to all further litigation of the title. (Fisk *v.* Miller, 20 Tex., 578; Lewis *v.* San Antonio, 26 Tex., 316; Lessees of Parrish *v.* Ferris *et al.*, 2 Black, 607; Miles *v.* Caldwell, 2 Wall., 35;

Blanchard *v.* Brown, 3 Wall., 245; Goodrich *v.* The City, 5 Wall., 573; Bigelow on Est., 142, 143, and references.)

Judgment in second suit may be pleaded in bar to first suit. (Nicholl *v.* Mason, 21 Wend., 339.)

III. There are no allegations to make the pretended compromise binding on the appellees. It was prior in date to the judgment of affirmance by the Supreme Court. The averment that the defendants in error had prosecuted his (Cook's) writ of error to final decision is incongruous and self-contradictory.

The conclusiveness of the judgment covers the pretended compromise.

The conclusiveness of the judgment is settled by this court. (See MSS. opinion last term, Cook *v.* Burnley.)

The decree dismissing his bill to enforce the compromise is also an adjudication of the question. (Durant *v.* Essex Company, 7 Wall., 109.)

Roberts, Chief Justice.—The defendants in error recovered a judgment against the plaintiff in error on the 4th day of August, 1871, in the District Court of Harris county, which was brought to this court by writ of error and filed on the 8th day of January, 1872.

The suit was originally instituted in the District Court of Calhoun county, on the 4th day of February, 1852, with the parties thereto, as follows, to wit: Albert T. Burnley, of New Orleans, Louisiana, and Levi Jones, of Calhoun county, Texas, *v.* William M. Cook, of Calhoun county, Texas; Soloman Cunningham, of Calhoun county, Texas; Josiah W. Baldridge, —— Sparks, and —— Chipman, of Louisiana, but soon expected to be in Calhoun county.

The venue was shortly afterwards changed to Harris county, where it remained until it was tried in 1871.

The object of the suit, as indicated by the allegations and prayer in the petition, was to recover damages for trespasses committed and contemplated by the defendants upon the Juan

Cano league of land, and to enjoin the defendants from continuing to commit the said trespass upon said land.

As grounds for maintaining such a suit the plaintiffs alleged that they were the owners of said league of land situated on Matagorda bay, and had laid off and were endeavoring to build up the town of La Salle on said tract, which was the most eligible site for a town on said bay, and that they had incurred great expense and performed much labor in the said enterprise; that William M. Cook had located a certificate of three hundred and twenty acres on Powderhorn bayou, within the limits of said Cano league, and pretended to be the true owner of said land so located by him, and was endeavoring to erect the rival town of Powderhorn, and to prevent the plaintiffs from building up the town of La Salle, and by his malicious representations had induced persons to abandon their engagements with plaintiffs in said business; that said Cunningham was shipping cattle from Powderhorn bayou under the authority of said Cook, and that Cook had "by like misstatements, and with a view to the injury and prostration of your petitioners, and especially the said Jones, procured the defendants herein, James H. and Josiah W. Baldridge, —— Sparks, and —— Chipman, to agree to build a wharf, warehouse, and other buildings and works at Powderhorn bayou, and on the said pretended location of said Cook, pretending that he has the means, and will speedily commence the building up of a town at Powderhorn bayou;" by all which plaintiffs are prevented from building up the town of La Salle, and have been thereby greatly damaged. They pray for $10,000 damages, and for an injunction to restrain defendants from entering on said land, and from placing lumber or building any house or structure upon the same.

The defendant, William M. Cook, filed general and special exceptions to the petition; pleaded that Jones has parted with his interest to Porter, if he ever had any; that neither of the plaintiffs have any title to the Cano league; that said league

does not cover defendant's land, as located by him, north of Powderhorn bayou; he claimed title to himself in the land entered upon by defendants under a valid certificate and location, and makes an exhibit of the field-notes thereof, and prays for the recovery of the same, with fifty thousand dollars damages, and that plaintiffs may be enjoined from interfering with the same. He admits entry upon the land located by him, and the efforts to build the town of Powderhorn on it, and the employment of his co-defendants to erect wharves, &c., as charged; he denies any malice and fraud on his part in his representations and dealings, but claims to have been greatly injured by the malicious representations and vexatious suits of said Jones, acting for the plaintiffs.

The other defendants appear by attorneys, and adopt fully the exceptions and answers of their co-defendant, Cook.

Thus this suit became a cross-action completely; each party setting up title to the land; each alleging malicious injuries and claiming damages; each praying an injunction, to be quieted in the enjoyment of their property; and each complaining of the acts of the other, in hindering the erection of a town on Matagorda bay for the promotion of the commerce of the country.

Each party had become both plaintiff and defendant in the judicial controversy. For either one to succeed in the objects sought as plaintiff, the very first step was to exhibit on the trial a clear title to the land in controversy. The case, however, did not then reach a trial upon the facts in issue; for on the 28th day of May, 1852, the case coming on to be heard on the exceptions of Cook and others to the petition, it was "decreed by the court that the injunction be dissolved and the bill dismissed," and defendants recover of plaintiffs and sureties the costs of suit.

Upon appeal to the Supreme Court this judgment was reversed, and the cause was remanded, upon the ground, as appears in the opinion of Burnley *v.* Cook, 13 Tex., 591,

that "the petition contains averments sufficient to maintain an action of trespass to try title."

A decisive opinion upon the injunction was not expressed, as it was understood that the controversy between the parties, as respects the injunction, was then at an end. (Burnley *v.* Cook, 13 Tex., 591.)

The case was immediately returned to the Harris county District Court, and there stood with the same issues and the same attitude of the parties as before the dismissal, appeal, and reversal, except that the injunction was not revived. If, however, its revival had been desired, such amendments as were necessary might have been made, as they afterwards were made, upon which an injunction might have been sought to be again issued.

The case, with these issues in it, stood continued from term to term on the docket, other pleadings and proceedings being had therein in the meantime, until the 4th day of August, 1871, when a judgment was rendered upon the pleadings and exhibits in favor of the executors and heirs of Albert T. Burnley, deceased, and Levi Jones against William M. Cook, in which it was adjudged that the title set up by said Cook to the premises be forever barred, and that said Cook "be perpetually enjoined and restrained from hereafter asserting in any of the courts of this State, or in writing, or by printed publication, or by spoken words, any right or title to any part of said Juan Cano headright league of land, by virtue of any claim to the same possessed by him on the 30th day of June, 1859, and that he be further enjoined perpetually from entering upon any portion of said league of land to commit any trespass upon it of any nature whatsoever."

This judgment gives to the plaintiffs not only the full benefit of an absolute defense against the claim set up by Cook in the suit, but also, in their character as plaintiffs in the suit, adjudges to them, the plaintiffs, the title to the whole league, which, though not expressed in terms, is implied as a necessary predicate for the affirmative action of the court

in awarding a perpetual injunction against Cook, restraining him from any future claims of or trespasses upon any part of the Cano league as claimed by the plaintiffs, by any title or claim prior to the 30th of June, 1869. The effect of this judgment is to confer upon plaintiffs the title to and right of peaceable possession of said league of land, secured as against the talk, writings, printings, and trespasses of Cook forever hereafter, founded on said prior claims, not by ordinary actions at law or by suits in equity, but by the extraordinary remedy of a contempt of a court of equity, with its pains and penalties of fine and imprisonment.

The plaintiffs did not obtain an order for a writ of possession only, because, as stated in their amended petition, they were already placed in possession. They did not recover damages, because at the trial they waived their claim for damages.

The facts upon which the plaintiffs made this effective defense against the cross-action of Cook, and obtained a most substantial recovery and protection of their alleged rights in the land, were not judicially ascertained by the finding of a jury, though Cook asked for a trial by a jury, in his last amendment, and again asked for it in his application for a rehearing; nor was a jury waived and the matters in issue submitted to the court to be found by the judge instead of a jury; but the adjudication was made by the court, as shown in the judgment entry upon the pleadings in the case.

That is assigned as error by Cook, as follows: "6th. That the court erred in rendering judgment for plaintiffs upon the pleadings in said cause."

To sustain this judgment in favor of the plaintiffs, we must find in the record facts alleged by the plaintiffs, and admitted by the defendant, sufficient to authorize such a recovery and decree.

In examining the question here presented, it will be more easy and perspicuous to exhibit the grounds of attack and

defense in the order of regular pleading, than to follow the order of amended petition and amended answers as they occurred in the intermediate pleadings of the parties, filed in the cause between the time of making up the original issue (in which the title and equities of each party were denied by the other) and the time of the final trial.

The plaintiffs, instead of relying upon the establishment of their superior title, by the proof of the grant, and deeds down to themselves, in the ordinary way in such actions, alleged in an amended petition, that the matters in issue between the parties in this case in respect to the title to the land were *res judicata*, and set up a judgment in favor of said Burnley and one Porter against Cook and others, in the District Court of the United States at Galveston, and affirmed upon writ of error in the Supreme Court of the United States for the land in controversy in this suit, which judgment has been rendered since the institution of this suit, in an action to try the title, and that said Porter and Jones represent the same interest. This is admitted by Cook, and he seeks to avoid its force and effect by alleging that said judgment is a nullity, having been rendered in a suit brought to litigate the same matter as that embraced in this suit, and instituted since the bringing of this suit, and during its pendency, in fraud of the jurisdiction of the District and Supreme Court of the State of Texas.

This position is certainly not tenable. For though that might be a good plea, if properly pleaded, and at the proper time, in abatement of the second suit, it is no defense to a judgment recovered in a suit brought since this one in a court of competent jurisdiction. Nicholl *v.* Mason, (21 Wend., 339.)

Cook states no facts which raise any question as to the difference in the parties of the two suits, nor does he raise any question upon the application for rehearing, nor in the assignments of error about the court having dropped a portion of the defendants out of the case when this judgment

was rendered, and therefore those matters need not now be considered.

He, however, in his amended answer sets up a new ground of equitable claim to the premises, and also in avoidance of said judgment against him in favor of Burnley and Porter, by alleging that while the said suit was pending upon a writ of error in the Supreme Court of the United States, he entered into a contract of compromise with George W. Carter, as the agent of the heirs of Albert T. Burnley, which stipulated the terms of a full settlement of the rights of the parties involved in the said suit, relating to the land in controversy, and provided for the abatement of said suit, and that said plaintiffs, in fraud of his rights under said valid settlement so entered into, prosecuted said suit in the Supreme Court of the United States, and procured an affirmance of said judgment, and had proceeded to enforce the same in derogation of his rights, and made an exhibit of the said contract of compromise, which purported to be, as stated by him, an agreement of compromise made by said Carter, "agent of the Burnley heirs, by virtue of a power of attorney from Seth M. Barton, who is the attorney in fact for the heirs of the estate of Albert T. Burnley," and signed by said Carter, as agent for the heirs of Burnley.

This was not excepted to by plaintiffs, either generally or specially, so as to impose upon the defendant the necessity of more specific allegations of agency or sub-agency, nor were exceptions taken to it in any other respect; but instead of that, the plaintiffs, by their amended petition, alleged that the matters relating to said compromise were *res judicata,* and in support of this they state that "on the 14th day of September, 1868, the said William M. Cook again filed in said District Court for Calhoun county another bill for the specific performance of said pretended compromise, upon which he had applied for and obtained another writ of injunction, prohibiting said executors from causing said writ of possession from United States Court to be executed, and requiring said ex-

ecutors, and Seth M. Barton, of Virginia, and George W. Carter to answer said bill; and said executors having answered said bill, thereupon moved the court in vacation to dissolve the injunction, which, after notice to said Cook, the judge in chambers granted, and afterwards, in term time, entered said order upon the records of the court. And the other defendants in said bill, Seth M. Barton and George W. Carter, having answered thereto, at the August Term of said District Court for Calhoun county, in the year 1869, said court having heard and considered said bill and answers, upon the motion of said executors, dismissed the said bill of complaint of said Cook, at the cost of said complainant, and discharged said executors without day." Plaintiffs made the said judgment of the court an exhibit, without the petition and answers. This judgment recites that "the motion of defendants to dismiss complainants' bill of complaint having been heard and duly considered by the court, because it appears to the court that the law is with said defendants, it is ordered that said motion be sustained; and the said defendants thereupon, by leave of the court, withdraw their cross-bill and plea in reconvention, and dismiss the same; whereupon it is ordered, adjudged, and decreed by the court that this cause be dismissed, and that the defendants go hence without day," and recover costs, &c. It is to be noticed that this exhibit does not show what was the nature of the defendants' motion, or upon what grounds the court acted in dismissing the bill, and therefore, as to the plaintiff in this suit, it must stand upon the construction and explanation given of it by the allegations of plaintiffs as a dismissal of the petition, "upon bill and answers upon the motion of said executors." This judgment was affirmed by the Supreme Court of the State, upon certificate, without reference to the merits. "Which proceedings and judgment these plaintiffs, as they allege, believe to be a final and conclusive adjudication of the matters sought to be put in issue in this cause."

The affirmance of the judgment secured its validity as a

8

final judgment, whatever may have been the errors committed by the court in rendering it. The same result, however, would have been produced by the failure to take an appeal or the lapse of time for revising it by a writ of error. Whether the judgment actually rendered was made final and conclusive, in one way or the other, the question would equally remain open as to what issue was decided and what facts were involved in that issue, and conclusively determined in its adjudication when the judgment is pleaded in bar, as in this case.

If, for instance, as alleged by the plaintiffs, the bill of complaint was dismissed upon bill and answer, on motion of the defendants in that suit, the issue determined by the court was not necessarily the validity or invalidity of the compromise, but, it might have been, the equity made by the bill, met by a denial of the alleged facts on which it was founded. The fact that the error committed by the court in dismissing the bill is cured by an affirmance of the judgment, or by failure to take an appeal or obtain a writ of error, cannot relate back to change the facts constituting the issue when the judgment was rendered, so as to make a fact to be conclusively determined which was not so determined at the time.

The case of William M. Cook *v.* Francis A. Burnley, decided in this court on the 10th of February, 1873, to which reference is made in the brief of counsel for appellees, as settling the conclusiveness of the adjudication in favor of the plaintiffs in this case, refers to the decision in the Supreme Court of the United States, 11 Wall., 659; and it is an affirmance of a judgment rendered in the District Court of Calhoun county, wherein the petition of Cook for an injunction was dismissed upon bill and answer, which is shown in the opinion of the court, as follows, to wit:

" The answer to the bill denies all the equities set up by the plaintiff. The District Court dissolved the bill and dismissed the injunction." (Case not published.)

So that, could this case be brought into this adjudication, it would stand on the same footing as to its conclusiveness as the case of Cook *v.* The Burnley Heirs, for specific performance of the Carter compromise, in respect to its being a judgment of dismissal upon bill and answer, and not upon exceptions in the nature of a demurrer to the bill.

Without attempting any elaborate or critical discussion of the law of estoppel or *res judicata*, it will suffice to refer to a few leading principles.

It is essential that "the issue in the second action, upon which the judgment is brought to bear, was a material issue in the first action, necessarily determined by the judgment therein;" and "that the former judgment was upon the merits." (Freeman on Judgments, sec. 256.)

"It may always be shown by evidence *aliunde* that any matter which the issue was broad enough to cover arose and was determined in the prior suit." (Ib., 273.)

If it appears *prima facie* that a question has been adjudicated, it may be proved by parol testimony that such question was not in fact decided by the former suit." (Ib., 274.)

"If, from the record alone, no intimation is given whether a particular matter has been determined or not, it is incumbent on the party alleging that a question has been settled by a former adjudication to support his allegation by proof *aliunde*." (Ib., 276.)

These general rules are supported by reference to decided cases, and show the liberality of courts in going even beyond the record to ascertain what was really decided in the adjudication which is pleaded in bar or as in estoppel. They also show that it was incumbent upon the plaintiffs in this case to show that the right of Cook under the contract with Carter was passed upon and determined against him in dismissing his bill for a specific performance. It would not necessarily be determined upon bill and answer, as it was alleged to be, and no other fact is exhibited to establish that it was adjudicated, except the judgment, which purports to have

been rendered upon motion of the defendants in that suit, and not upon exceptions in the nature of a general demurrer, and therefore does not aid the allegation that it was determined on its merits.

This is very different from the case of Durant *v.* Essex Company, 7 Wall., 109, in which it is said that "the decree dismissing the bill in the former suit in the Circuit Court of the United States, being absolute in its terms, was an adjudication of the merits of the controversy, and constitutes a bar to any further litigation of the same subject between the same parties. A decree of that kind, unless made because of some defect in the pleadings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, is a final determination. * * * In the case in the Circuit Court we are not left to conjecture or to presumptions as to what was intended by the decree. The plea of defendants avers that testimony was taken on both sides, and that the case was heard on its merits, and argued by counsel." (7 Wall., 109, 110.)

That was simply a full trial in a court of equity, according to its mode of procedure, it was equally as conclusive, as a judgment and decree of a court rendered upon the verdict of a jury would be under our system. This opinion holds that if the dismissal had been "upon some other ground, which does not go to the merits," the judgment would not be a bar to another suit.

Generally, the dismissal of a bill in equity will be presumed to be a final and conclusive adjudication on the merits, unless the contrary appears in the pleadings or in the decree of the court. (Ib., 270.) This rule is announced under the supposition that the dismissal has been adjudged upon proper exceptions or other regular proceedings, which brought into review the merits of the bill so dismissed. This, with the qualification, is thus perspicuously stated in a case from Massachusetts: "To be a bar to future proceedings, it must appear that

the former judgment necessarily involved the determination of the same fact, to prove or disprove which it is offered in evidence. It is not enough that the question was in issue in the former suit. It must also appear to be precisely determined. Where, in the answer, various matters of defense are set forth, some of which relate to the maintenance of the suit and others to the merits, and there is a general decree of bill dismissed, it is impossible to hold the decree a bar to future proceedings. (Foster v. Busteed, 100 Mass., 409; Burlen v. Shannon, 99 Mass., 200; cited also in Freeman's Jud., sec. 276.) This is because it is uncertain upon what ground the bill was dismissed, and so it is in this case. The former suit may have been dismissed upon some other ground than that for which it is now pleaded to establish, being dismissed upon bill and answer, as it is alleged by the plaintiffs. Had the petition and answer and the motions or exceptions been set out in the amended petition as well as the judgment-entry, it might have settled the question as to what the court did decide upon in the dismissal of the petition.

The deficiency in the amended petition, in not setting out the facts which showed that the Carter compromise had been adjudicated, is supplied by adding to that which is set out and alleged: the averment that it was in issue and adjudicated in said former suit—a fact which was susceptible of proof if it existed. Had it been admitted in the defendant's answer, that, of course, would have superceded the necessity of its proof, and would have justified the court in deciding the case upon the pleading, as it did. But that important fact was denied by Cook, and he asked for a trial of it by a jury in his last amended answer, and also in his application for rehearing; from which it is obvious that no consent was given by him for the matters in issue to be determined by the court, without a submission of the facts in dispute to a jury.

The contract for a compromise is alleged to have been made with Carter, as agent of the Burnley heirs, after the judgment was rendered in the District Court of the United

States, and while it was pending in the Supreme Court of the United States, and purports to have been made to procure the abatement of that suit, and to settle the matters involved in it. No exceptions were filed to it as a defense; and the facts alleged in avoidance of it as a defense were denied, which made an issue of fact that should have been submitted to the jury, as prayed for by Cook. In disregarding his rights in that respect, the court below committed a material error, which has been properly assigned as such by Cook in this court.

The plaintiffs, in their amended petition, filed at the July Term, 1871, renew their application for an injunction, upon the ground of the alleged numerous and vexatious suits for injunction instituted by Cook, to impede them in arriving at the rights that have been adjudged to them; and upon the further ground, that he was making representations and claims in reference to the property in controversy, in derogation of their rights.

Cook excepted to this as constituting insufficient grounds for an injunction; which exceptions were overruled, and he assigns this ruling of the court as error.

This question has not been discussed by counsel; and as it may come up again under different pleadings, and upon the finding of a jury upon the facts involved, it may not be profitable now to consider the subject further than to call attention to the fact that there has been but one substantial trial on the merits of this controversy, or any part of it, so far as it can be seen from this record; and that a perpetual injunction restraining the defendant from ever bringing another suit on claims anterior to a certain date, from ever trespassing upon the Cano league of land, and from ever making any claim by publication, by writings, or by spoken words, should be founded, if permissible to its full extent at all, upon extraordinary grounds, made very plain and specific, and established with great certainty of proof. (Hilliard on Injunctions, 243, 245, 279, 281, 396–398.)

To shut the door of the courts against a man, to stop him at the line of a particular league of land, to shut his mouth from uttering a word of claim to a piece of land, are extraordinary powers, whose exercise by any court in this country should be examined into with close scrutiny before they meet with judicial sanction in any case.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

Mr. Justice MOORE did not sit in this case.