## PHILLIS OLDHAM ET AL. V. A. W. McIVER, ADM'R.

1. MARRIAGE BETWEEN BLACK AND WHITE RACES FORBIDDEN.—
The laws of Texas forbidding the intermarriage of the white and
black races, such marriage will not be presumed from the cohabita-
tion, as man and wife, of a white man with a mulatto woman, from
1837 until his death, in 1868.

2. OVERRULED.—Honey *v*. Clark, 37 Tex., 705, overruled.

3. RES ADJUDICATA.—To determine the effect of an adjudication plead-
ed in bar in another suit, it is necessary and proper to look into the
pleadings and the judgment rendered in the former suit, to ascer-
tain the manner in which it was tried, and the issues determined.

4. EFFECT OF CERTIORARI—RES ADJUDICATA.—In an injunction suit
brought by tenants holding the homestead under a lease from the
administrator, and against parties to whom, as widow and children
of the deceased, the homestead and exempt property had been set
apart by the Probate Court, a decree was rendered upon the rent
contract, and the order of the County Court setting apart the home-
stead, and the further finding of the jury as to the rental value of
the homestead during the term, directing that at the expiration of
the lease the homestead should be turned over to the so-called widow
and children : *Held*, That such decree could not be pleaded in bar
in an appeal from the original order of the Probate Court, setting
aside the homestead, taken by *certiorari* to the District Court.

5. RES ADJUDICATA—MATTER IN ISSUE.—In such injunction suit, the
matter in issue, was whether or not the order of the County Court
was in force. The matter in issue in the appeal, is whether it should
remain in force upon a revision of it by the District Court, acting in
the nature of an appellate tribunal, to try its validity in a trial *de
novo*.

6. SAME—PRACTICE.—Where it is doubtful, from the face of the rec-
ord of the pleadings and judgment in the judgment interposed,
what was the true issue, it is competent to resort to evidence *aliunde*
to ascertain it.

7. PRACTICE IN APPEALS TAKEN BY WRIT OF CERTIORARI.—The
order setting apart the homestead and exempted property having
been taken for revision to the District Court, and having been con-
tinued for several terms, the administrator amended and asked judg-
ment for the recovery of the said property and the value of its use,
&c.; and no exception having been taken to the amendment below :
*Held*, While such amendment and action upon it were irregular, it
is not ground for reversal.

APPEAL from Burleson. Tried below before the Hon. D. M. Prendergast.

The briefs in the case are interesting as a discussion of the questions involved. They contain, together, a full statement of the matters necessary to understand the opinion.

*J. D. Thomas,* for appellants.—The County Court, in January, 1869, set apart to appellants the homestead and exempt property of William Oldham, as his surviving wife and children. The cause was brought by *certiorari* to the District Court, where, after verdict for plaintiffs on special issues, judgment was rendered against them *non obstante veredicto.*

The jury find that William Oldham lived and cohabited with Phillis as a wife from 1839 till his death, in 1868. This is twenty-nine years. He had by her four children, whom he always recognized as his own, among whom were plaintiffs Utis and Otho. Phillis was a slave, and half African. She claimed to be the widow, under the authority of Honey *v.* Clark, 37 Tex., 686.

I do not deem it necessary to argue the validity of that decision. It speaks for itself, and is the law of Texas.

But another question seems to me decisive of this case, independently of Honey *v.* Clark.

There was a former adjudication pleaded. The judgment relied on was set out.

It will be seen that the petition in that case charges that appellants are not the widow and children of William Oldham. They squarely allege, in their answer, that they are, and they claim the possession and use of the homestead and exempt property in that character only. They make their answer a cross-bill. The administrator, who was already a party, answers and joins issue on the main question of their status. They obtain all they demand in that suit, and obtain it solely on the ground of that status. This judgment was acquiesced in by all parties, and is still in full force. I insist that it is a conclusive adjudication of the fact that Phillis was

the wife of William Oldham. I refer to Lee *v.* Kingsbury, 13 Tex., 70–72; Tadlock *v.* Eccles, 20 Tex., 790–792; Baxter *v.* Dear, 24 Tex., 20.

The extent of the conclusiveness of judgments is further shown. (Herman on Estoppel, 51, 52, 80–84.) A judgment which fixes the status of a person, is regarded as a judgment *in rem.* (2 Smith's Lead. Cas., 585, 586, 672–674; Herman on Estoppel, secs. 108, 113; Freem. on Judg., sec. 349.)

On this question, in Lee *v.* Kingsbury, 13 Tex., 71, Judge Wheeler says: "It is not necessary to the conclusiveness of the former judgment, that issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient, if that point was essential to the former judgment." The case of Collins *v.* Bennett, 46 N. Y., 490, is to the same effect. A let his horse to B to feed; B used him contrary to directions, and foundered him. A sued him for a conversion. Pending this suit, B sued A in Justices' Court for the feed of the horse. A pleaded the conversion; but the defense was overruled, and B recovered his bill. There was no appeal; and this was held to be a final adjudication against the conversion when pleaded in the original suit. The pertinency of this case to the one in hand is very striking. As in this case, there were two suits at the same time, by different plaintiffs, and for different purposes. As in this case, the second was first decided, and in a different court, and though incorrectly decided, the judgment was a bar to the first. (See cases there cited; Morgan *v.* Plumb, 9 Wend., 287; Sheldon *v.* Carpenter, 4 N. Y., 579; Gates *v.* Preston, 41 N. Y., 113; Bouchaud *v.* Dias, 3 Denio, 238.)

Now, I admit that in the case pleaded Phillis is not in terms adjudged to be the widow of Oldham; but she claims the property in suit in that character alone. It was withheld from her, because that character was denied her by the administrator of Oldham. The court decree Teaff & Thompson to hold as her tenants, to pay her the rent of the land and hire of the personal property for that year, and at the

end of the year to restore her and her children to the posses-
sion.   I say this case clearly falls within the rule in Collins
*v.* Bennett, cited above.

An attempt has been made to fix odium on a claim like
this against the estate of a white man.  . I say the representa-
tive of a man who equalized himself with a negro, by claim-
ing her as his wife for twenty-nine years, and by begetting a
family of children by her, stands in a poor attitude to hold
the negro up to odium; and I know this honorable court will
not swerve from the precedents, to the extent of a hair, to
defeat the rights of these appellants.

It has been claimed that the District Court had no juris-
diction to fix the status of these parties.   I say it had jurisdic-
tion to determine every question pertinent to the case before
it, and this was one of them.   But having general jurisdiction,
if there are any circumstances under which it could determine
the status of the parties, those circumstances, in a collateral
action, will be presumed to have existed.   (Freem. on Judg.,
sec. 124.)   Now, there are circumstances under which the
District Court has even original probate jurisdiction.   (Pas-
chal's Dig., 1406.)  .If necessary to sustain its jurisdiction,
those circumstances will be presumed.

The only question of fact on the plea of former adjudica-
tion, (the identity of parties,) is found for appellants.

*Sayles & Bassett*, for appellee.
I. Under the law in force at Oldham's death, (Paschal's
Dig., 1305,) it was made the duty of the County Court to set
aside to the widow and children of the deceased all such prop-
erty as was exempt from execution or forced sale by the Con-
stitution and laws of the State.

Who are the widow and children thus made the objects
of the bounty of the law?   Clearly, none can be included
within the terms except the relict and the offspring of a law-
ful wedlock.   It will not be necessary to consult the diction-
aries to find out the meaning of the words.

The jury, in their verdict, say that there never was a marriage between the decedent and the appellant Phillis, but that there existed between them a cohabitation as man and wife for many years. Such cohabitation, not being a lawful marriage, was an immoral, if not an unlawful, act. The policy of the law favors marriage, but it has no encouragement for illicit intercourse, however intimate or long continued. (1 Bish. on Mar. and Div., 436–438.)

Cohabitation is one of those facts from which a jury may or may not, under proper instructions, find that a marriage exists; but beyond that it could not avail the plaintiffs. An unlawful cohabitation—and this is the extent of the finding of the jury—cannot invest either of the parties to it with those rights and privileges which the law has reserved for those only who have entered into the highest and holiest obligation known to the codes of God or man.

II. The jury having found that William Oldham was of white or European extraction, and that Phillis was the descendant of Africans, having one-half negro blood in her veins, the court is aware that there could have been at no time any lawful marriage between them. By the law of 1837, (Paschal's Dig., 4670,) the attempted intermarriage of such persons was denounced as " a high misdemeanor, and punished as such," and the marriage itself was declared null and void. Thus the law stood until the adoption of the Penal Code in 1856, amended in 1858, when both the intermarriage and the cohabitation were made felonies, and punished by confinement in the penitentiary for not less than two nor more than five years. (Penal Code of 1856, art. 386,—Paschal's Dig., 2016.)

That prohibition, which is a mere police regulation, stands unrepealed to-day, and unaffected by the results of the war, or the provisions of the civil-rights bill, or the several amendments to the Constitution of the United States. We unhesitatingly affirm, that it is a penal offense to-day, under Paschal's Digest, 2016, for a white man, within this State, know-

ingly to marry a negro or woman of mixed blood, descended from negro ancestry, to the third generation inclusive, or having so married out of the State to continue to cohabit with such negro, or descendant of a negro, within the State. So held recently by courts both North and South, State and Federal, radical and democratic, upon full argument and exhaustive examination of the question on principle and authority. (State v. Gibson, 36 Ind., 389 (10 Am. R., 42); State v. Hairston, 63 N. C., 451; State v. Reinhardt, 63 N. C., 547; 1 Bish. on Mar. and Div., secs. 308, 308a; decision in Federal Circuit Court, by Hon. John Erskine, Am. Law Times for          , 1.)

Judge Erskine's decision was rendered on the trial of a writ of *habeas corpus* sued out by parties convicted under an old State law of Georgia, forbidding under penalty the intermarriage of white and colored persons.

In the North Carolina case, the defendants were convicted of the offense of fornication and adultery, in 1869. On the trial, it appeared that one of the defendants was a colored man, the other being a white woman, and that they were cohabiting as man and wife. The defense was that they had been married. The facts established a marriage, so far as that relation could subsist between persons of the different races. It was held that the provisions of the marriage act of 1839, declaring such intermarriages to be absolutely void, were still in force, and that the pretended marriage was no defense to the indictment. (63 Ind., 451, 547.) The Indiana case is to the same effect.

We respectfully ask the court, if it have any doubt on the question, to read the opinions referred to.

In the argument below, counsel relied on the marriage ordinance of our Constitution, and the retroactive construction given to it by your predecessors in Honey v. Clarke, 37 Tex., 686; but in view of your honors' later decision in Clements v. Crawford, 42 Tex., 601, in which Honey v. Clarke was expressly overruled, and the ordinance held not to be appli-

cable to the living together of white and black, it is not considered necessary to notice that question further.

But, after all, the question is whether or not there was a lawful marriage between the parties. If there was, certain results—and among other things the right of the widow and children to the exemptions—necessarily followed. If there was no marriage, no such right existed. . The question as to whether or not there was a marriage was for the jury alone. (1 Bish. on Mar. and Div., sec. 538.) They found that there was no marriage. The court will not look beyond the verdict, except to see that it is supported by the evidence. There being no marriage, there was no widow and no children, within the terms of the law, to take the exemptions; and the creditors represented by the administrator are therefore entitled to the property.

*Seth Shepard,* also for appellee.—In addition to the points made in the able brief of Messrs. Sayles & Bassett, I submit the following, on the effect of the judgment pleaded in bar by appellants:

I. The judgment in Teaff & Thompson *v.* Appellants is not conclusive of any material fact necessary to the support of the judgment in this cause.

"The essential conditions under which the exception of the *res judicata* becomes applicable, are the identity of the thing demanded, the identity of the cause of the demand, and of the parties in the character in which they litigate." (Washington, A. & G. S. P. Co. *v.* Sickles *et al.,* 24 How., 342; Aspden *v.* Nixon, 4 Id., 467.)

These essential conditions are not found in these two judgments. The action in the judgment pleaded was for possession merely; the title was not in controversy. A judgment in a possessory action cannot be pleaded in bar in another action involving title. (Herman on Est., sec. 71; Arnold *v.* Arnold, 17 Pick., 4; Bigelow on Est., 25–35.)

II. In the trial of that cause, but one issue was submitted

to the jury; that was the value of certain property, rents, &c. This appears from the verdict, the charge of the court, and the evidence of the foreman of the jury.

The verdict of a jury and judgment upon one count in a declaration is not conclusive of facts alleged in other counts. (24 How., 333.)

III. The testimony of Judge McIver was offered to show that no such issue as is involved in this suit was raised in that one, and that' in fact Oldham's then administrator withdrew from the case and left the question to the other parties. The court excluded this testimony, though clearly admissible. (24 How., 344; Young *v.* Black, 7 Cranch, 565; Matheson *v.* Grant, 2 How., 263; Freem. on Judg., sec. 272–274.)

IV. By order of the County Court, the appellants, in a time of military rule, had been put in possession of the Oldham homestead. This judgment, though entirely suspended and set aside by the *certiorari* proceedings, was evidently taken by the court, in the case of Teaff & Thompson, to be a conclusive adjudication of the collateral facts of Phillis' status; and but one issue, as before stated, was given to the jury.

Her right in this cause depends upon her status as wife of Oldham, deceased.

Its unauthorized finding — or, rather, assumption by the court, as collateral to the main issue in the other case — is not conclusive of anything in this cause.

"Neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter to be inferred by argument from the judgment". (Herman on Est., sec. 40, quoting language of Chief Justice DeGrey in Duchess of Kingston's case.)

ROBERTS, CHIEF JUSTICE.—The question as to whether Phillis Oldham, under the facts found by the jury in this case, was the wife of William Oldham at the time of his death, so as to be entitled to a homestead and other property exempt

from administration, has been decided by this court adversely to such a claim. She being one-half African blood, and he being white, they could not have been man and wife at the time of his death under the laws of this State. (Clements *et al. v.* Crawford, 42 Tex., 601, and others, overruling Honey *v.* Clark, 37 Tex., 705; Frasher *v.* The State, 3 Tex., (Court of Appeals,) 263.)

The main objection to the judgment, relied on in the brief of appellants, is that the court erred in its action upon the defense of *res judicata* set up to this proceeding of *certiorari* to revise and set aside the order of the County Court, setting apart to her and to her children the homestead and other exempted property.

At the January Term of the County Court of Burleson county in 1869, upon her application for herself and children, the said order was made, setting apart to them the homestead and other exempt property, as the widow and children of William Oldham, as being the constituents of his family, left at the time of his death, in 1868.

The estate having been administered on by Williamson S. Oldham in 1868, an order had been obtained for renting the farm, and farming stock, and implements of said estate, including the said homestead and exempted property, which had been rented to Teaff & Thompson for the year 1869, and they had taken possession of the same previous to the order of the County Court setting apart the homestead and other property.

To prevent the execution of an order from the County Court then in the hands of the sheriff, directing him to put her and her children in possession of said homestead and exempt property that had been set apart to them, said rentors, Teaff & Thompson, in February, 1869, filed a petition for an injunction in the District Court of Burleson county, making said Phillis, and her said children, and said administrator parties, as defendants in the suit. The defendants filed answers, and at the Spring Term, 1869, of said District Court a judgment

was rendered in said suit, determining that Teaff & Thompson should retain the homestead and other exempt property during the year 1869, and hold it as tenants of Phillis and her said children, and at the end of the year turn it over to them, and pay to them $780, its rental value for the year, as assessed by the jury, (to ascertain which was the only matter submitted to or found by them in the trial of the case,) and that amount should be deducted from the rent note given by Teaff & Thompson to the administrator, and that they should be released from that amount of the debt due at the end of said year to the administrator for the rent of the whole of the property so rented by them, including the homestead and exempt property. This judgment was carried out, and has never been appealed from or reversed; and this is the judgment which is set up by Phillis and her children as *res judicata,* as concluding and estopping the administrator *de bonis non,* A. W. McIver, from disputing the fact that she was the lawful wife and her said children the heirs of William Oldham, deceased, at the time of his death, in 1868, in this proceeding by *certiorari,* instituted by the administrator to revise and set aside the order of the County Court, made in January, 1869, setting apart to them, as his widow and children, said homestead and exempted property.

Under the law as it existed in 1869, the County Court was authorized to set apart to the widow and children of the deceased, if he had such, the homestead and exempted property. (Paschal's Dig., art. 1305.) This gave that court the right to ascertain the fact that she was his lawful wife, and that certain of her children were his heirs, and to make the order thereon setting apart the property. That was an adjudication of that fact by a competent court, having jurisdiction of the matter, as pertaining to the estate of William Oldham, then being administered in said court. That order conclusively established that fact in any other suit or proceeding in which it was or might be involved, or be put in issue, until set aside by appeal or *certiorari,* directly, and not collaterally, attacking

its validity as a judgment of court establishing that fact.
That is what the administrator sought to do by this proceed-
ing of *certiorari,* instituted in the District Court in February,
1869, the next month of the same year the order was made.
By the statute, he was entitled, at any time within two years,
to this remedy by *certiorari,* issued from the District Court by
order of the district judge, " to remove the proceedings to the
District Court, there to be revised and corrected." (Paschal's
Dig., art. 480; Act of 1848.)    The trial is *de novo* in this pro-
ceeding in the District Court, the same as upon appeal from
the order of the County Court sought to be revised and cor-
rected.    (Moore *v.* Hardison, 10 Tex., 471.)    The fact, there-
fore, of her being the lawful wife of William Oldham, upon
which said order was founded, was on this trial subject to be
disputed and disproved by the administrator; and if success-
fully done, a predicate would be laid for the action of the
District Court in revising and correcting said order of the
County Court.

Where there had been an order of the County Court dis-
tributing an estate, and this remedy was resorted to, Chief
Justice Hemphill said: " The proceedings are to be revised
and corrected.    They are not final, in an appellate sense, until
after the lapse of two years.    This judgment may be reversed
or reformed as the law may require, and the property re-
distributed according to the very right of the parties to the
cause.    Any rights which may have grown up under the judg-
ment of the County Court prior to the *supersedeas,* cannot be
disturbed; as, for instance, rights claimed through public
sale under the judgment, &c." (Dunham *v.* Chatham, 21
Tex., 249.)    This case, for the revising of said order of the
County Court, was not tried and determined in the District
Court until the September Term, 1874, several years after
the injunction suit brought by Teaff & Thompson had been
determined, and the judgment therein executed, in favor of
Phillis and her children.    It is not shown that there have been
any rights of third persons intervening, in reference to this

property, that would prevent the order of the County Court from being corrected, if found to have been erroneously made. After Phillis and her children (Otho and Eutis) appeared and answered in this case, at their instance it was ruled by the District Court that they, in this proceeding, occupied the position of plaintiffs, and required the title of the case to be changed, and it thenceforth proceeded in accordance with said ruling, as exhibited in the pleadings and in the orders and judgment of the court. And it was in this attitude that they, as plaintiffs, set up against the administrator, as defendant, in what is styled an amended petition, "that the matters in controversy in this suit have heretofore been fully adjudicated and settled by the judgment and decree in the cause numbered and known on the docket of this court as number 1005,"—it being the injunction suit heretofore referred to.

It is contended, by counsel for the plaintiffs, that although in the cause pleaded as *res judicata* she is not adjudged in express terms to be the widow of Oldham, that fact was adjudicated in her favor by the judgment that was rendered, decreeing the homestead and other property to be held by Teaff & Thompson as tenants of her and her children, to pay them rents, and to turn over to them the said property at the end of the year 1869, they having claimed it in said suit by cross-bill, upon the sole ground of the fact, which was put in issue in said cause, that she was such widow.

To determine the correctness of this position, and the force of it in the determination of this case, it is necessary and proper to look into the pleadings of the parties and the judgment rendered in that suit, which exhibit the manner in which it was tried. (Cook v. Burnley, 45 Tex., 97.)

If that is done, it will be found that they (the present plaintiffs) obtained that judgment in their favor by pleading that it had been adjudicated by the order of the County Court, rendered in January, 1869, that she was the widow, and the two children joined with her were the heirs, of William Oldham, and upon that alone, and not upon a trial or deter-

mination of that fact otherwise by said District Court in the trial of said cause. . From the mode of trial, and in view of the pleadings, it was impossible for the judgment of the court to have had any other foundation in fact established in the case, so far as it found in their favor, but this order of the County Court. The judgment in their favor was rendered upon " bill and answer," and the only matter submitted to the jury was to ascertain and report to the court the value of the rent of the homestead and exempted property for the year 1869. As to that part of the judgment which dissolved the injunction, that might have been done upon the facts alleged in the petition and denied in the answer, styled a cross-bill, if the facts setting up the grounds for the injunction had been denied sufficiently to meet the equity arising upon them, so as to put them in issue as disputed facts.

Not so, however, in rendering a judgment upon the merits in their favor upon " bill and answer." In that case, the judgment must be rendered, and was rendered, upon the facts alleged on one side and admitted on the other, upon its being assumed by the court that the other facts disputed, and issues raised thereby, were immaterial and ineffective, however they might be determined if submitted to a jury, to vary or control the legal effect of the facts admitted, or taken as established by the court without being submitted to the jury.

In the petition of Teaff & Thompson for injunction, it is stated that they had rented the whole of the farm, and stock, and farm implements, pursuant to an order of the County Court of Burleson county, made in 1868, and that afterwards Phillis Oldham and her children had applied to the said County Court and had obtained an order of said court setting apart to them a part of the property which they had rented, to wit, the homestead and other exempt property, upon their representation that she was the widow and they the heirs of William Oldham, which they deny to be true, alleging that said William Oldham was a free white man, and said Phillis and her children were formerly the slaves of

said Oldham, and stated other reasons relating to her having presented an account against the estate, and to their good faith in and part performance of their contract of renting, why they should not be dispossessed under the said order of the court, which was made *ex parte*, without notice to them.   The answer to this petition by Phillis and her said children, styled a cross-bill, admits the renting as stated in the petition, and they deny so much of complainants' bill as charges "that they are not the widow and minor children of the decedent, and say that said allegation in complainant's bill is untrue, and in verification of which fact these respondents refer to the action of said County Court at its January Term, 1869, upon your respondents' aforesaid application, and the judgment and decree of said court thereon setting apart to respondents the homestead and other property mentioned therein, as exempt under the Constitution and laws of said State, which said decree is made a part of this answer, by certified copy hereto annexed, marked exhibit 'A.'"   Certified copies of the application to and order by the County Court referred to, were attached to the petition.

In another part of the said cross-bill, they allege, "that by virtue of said decree they are entitled to the possession of said homestead and exempt property, or to the rents and profits produced by the same," and pray for a decree to that effect.   In no part of the cross-bill is the claim made to the homestead and other exempt property by virtue of the fact of her being the widow and her·children the heirs of William Oldham, as an independent fact, to be established otherwise than as it had already been established, by and through this order of the County Court.

The administrator having been made a defendant, filed an answer, denying that the District Court had jurisdiction of the matter, denying the sufficiency of the cross-bill and the facts stated in it, and pleaded that the said order had no validity, because he had obtained a *certiorari* and *supersedeas* removing said cause to the District Court.   This general denial of

the facts of the cross-bill was a denial of them as they were alleged, and did not thereby make an issue upon the fact of her having been the widow of William Oldham, irrespective of its connection with and establishment by the order of the County Court,—for it was not otherwise alleged; and if it had, it would have been an immaterial issue; and if it had been proved on the trial as an independent fact, and specially found by the jury, that she was not lawfully his widow, that would not have contravened the legal effect of the order of the County Court, pleaded by her and exhibited to the court, and found to be then in force. It was, in effect, a plea of *res judicata*, establishing that fact conclusively in her favor by the proper court. The general denial of the facts of the cross-bill by the administrator, simply, in effect, put in issue the existence of the order as alleged; and his plea, that it was superseded, put in issue its then existing validity and force. Neither one of these issues was submitted to the jury, and they were both evidently disregarded by the court in rendering the judgment upon "bill and answer."

The judgment was rendered upon the facts admitted to exist in the petition and cross-bill, to wit, the rent contract, and the order of the County Court setting apart the home-stead and other exempt property; and upon these alone, aided by the finding of the jury upon the only matter submitted to them, of the value of the rent of said property for 1869. The judgment itself shows this.

The judgment recites that it was rendered " upon a full hearing of the bill, answers, and arguments of counsel," and " upon consideration thereof," and describes the property which it was adjudged that Teaff & Thompson should retain, as tenants to her and her children, for the year 1869, and turn over to them at the end of that year, as being that which was " set apart by the decree of the Probate Court of Burleson county, rendered at its January Term, 1869, to the defend-ants, as a homestead out of the estate of William Oldham." By this, as well as by the matter decreed, it is demonstrated

that the order of the County Court was made the basis upon which the decree was rendered.

The tacit assumption made by the court, in rendering the judgment, that there was such an order, although it was denied by the administrator, and the assumption that it was then in force, although its validity was denied by the administrator in his plea alleging that he had superseded it, do not conclusively establish, as against the administrator, that it is to remain in force against this proceeding to revise and correct it.   Its existence and then subsisting validity was assumed by the court, in reference to the trial of that case; and if this tacit assumption had been expressed in the judgment, it could have amounted to no more than a declaration of adjudication that there was such an order, and that it was then valid for the purposes of that decree, notwithstanding the obtaining of the *certiorari* and *supersedeas*, as pleaded by the administrator, which if contained in the judgment would not conclude the administrator from resorting to this remedy to set aside the said order.   For, suppose that this issue had been tried, and it had been shown that no valid *supersedeas* bond had been filed, then it must have been found against the administrator, and it would have been declared in the judgment that the order of the County Court was then still in force.   It can have no greater effect, by the court having tacitly assumed and acted on it as being then in force, though erroneously, without the fact of its having been superseded having been tried.

If, then, that order of the County Court could be used as *res judicata* in that suit, and on it alone to procure a judgment in favor of plaintiffs in that suit, and then that judgment so procured be used as *res judicata* in this suit, it would have subserved the purpose of defeating the jurisdiction of the District Court as a court of appeals, and prevent its action under the statute in revising and correcting said order.

The rule as laid down in reference to cases generally, is that " it is not necessary to the conclusiveness of the former

judgment that issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient, if that point was essential to the former judgment." (Lee v. Kingsbury, 13 Tex., 71; Tadlock v. Eccles, 20 Tex., 790.)   It was not essential to the former judgment, that it should have been established that Phillis was the widow of William Oldham; nor was it so established otherwise than by the order of the County Court, pleaded as *res judicata*.   Nor was it necessary in this case to resort to other evidence to show it, as it was manifest from the pleadings and judgment in that case, which was in evidence in this.   Still it was proved in this case that there was no evidence introduced, on the trial in that case, to prove that Phillis was the wife of William Oldham. (1 Greenl., sec. 532; Bledsoe v. White, 42 Tex., 136.)   Nor was the same matter directly in question in that suit and in this.   In that, the matter directly in question, was whether or not the order of the County Court was in force at that time; and the matter directly in question in this, is,—Should it remain in force upon a revision of it by the District Court, acting in the nature of an appellate tribunal, to try its validity in a trial *de novo?*

On a trial under a plea of *res judicata*, in a case like this, it is proper to look to the pleadings and judgment in the former suit, to ascertain whether the exact matter in controversy was decided, or necessary to the decision; and where that is doubtful from the face of the record, it is competent to resort to evidence *aliunde* to ascertain it.   (Cook v. Burnley, 45 Tex., 97; Bledsoe v. White, 42 Tex., 136; Cromwell v. County of Sac., 4 Otto, 351.)

Errors were assigned to the judgment rendered in this case, because it provided for the return of the personal property, and for its value, and the value of the use of it pending the suit.

In the trial of such a suit, the proper judgment would ordinarily be that the order of the County Court should be set aside.   The case having been continued several terms of the

court, and the property in dispute having been put in the possession of plaintiffs by the judgment and order of the District Court in the injunction suit in the District Court, the administrator filed an amendment, claiming that the property should be returned to him, and that a judgment should be rendered for the property, with the value of its use and occupation and hire.

There were no exceptions taken to this amendment; the trial was had and judgment rendered in reference to it; and no objection was specially made in the motion for new trial, or otherwise, in the court below; and there is no point made upon it in the brief of counsel; and, therefore, as it seems to have attained the ends of justice in the case, it is unnecessary for this court to make a special inquiry into the propriety, as matter of practice, of joining the two remedies in the same proceeding.   It at least has the merit of having settled the whole matter at once, and in a way that certainly no injustice has been done to the parties, so far as anything appears in the record of this case.

Judgment affirmed.

AFFIRMED.